[No. 33503. Department One. April 19, 1956.]

ANDREW BLOMQUIST et al., *Respondents*, v. GRAYS HARBOR MEDICAL SERVICE CORPORATION, *Appellant*.[1]

*John H. Kirkwood*, for appellant.

*Lester Stritmatter* and *Donn F. Lawwill*, for respondents.

FINLEY, J.—This is an action based upon an insurance contract.

On April 14, 1952, the Holsum Baking Co., through its manager, Andrew Blomquist (one of the plaintiffs in this action), entered into a medical and hospital coverage insurance contract with Grays Harbor County Medical Service Corporation (defendant). The contract purportedly covered employees of the company as well as the plaintiffs

[1] Reported in 296 P. (2d) 319.

(who were officers of the Holsum Baking Co). By its terms, the contract was effective for a period of one year, beginning June 1, 1952, and it was cancelable by thirty days notice in writing. The Holsum Baking Co. deducted each month a stipulated amount from the wages or salaries of each employee who desired coverage under the contract, and remitted the premiums to the defendant corporation.

Because of several disputes between Andrew Blomquist (Holsum's manager) and Mr. Niles (defendant's manager) concerning defendant's obligation to pay certain medical and hospital bills which were incurred by Holsum's employees, the remittances to the defendant corporation for certain periods were as much as several months late in some instances. These late premiums were accepted by the defendant corporation up to December, 1952. However, subsequent to February 12, 1953, the defendant corporation took the position that the contract had been orally canceled by virtue of a telephone conversation on that date between Mr. Blomquist and Mr. Niles, and refused a tender of premiums on March 14, 1953, for the months of December, 1952, and January, February and March, 1953.

The defendant refused to pay certain medical and hospital expenses incurred by the plaintiffs and, allegedly, covered by the insurance contract with the corporation; whereupon, plaintiffs brought this lawsuit to recover money they had expended in payment of such hospital and medical expenses. The defendant corporation, in an affirmative defense, alleged that the insurance contract had been canceled and denied liability thereunder. The trial court found that the evidence was insufficient to support an oral cancellation of the contract and entered judgment for the plaintiffs, less the amount of certain insurance premiums that had not been paid. The defendant corporation has appealed.

The pertinent provisions of the insurance contract read:

"All payments shall be made on or before the 5th of each month. It is understood that all monies due the Bureau is a trust fund provided by Chapter 136 of the Session Laws of 1929. The Bureau reserves the right to inspect the payroll of the employer to ascertain the number and identity of em-

ployees, and shall not be held liable for treatment while said employer shall be in default of any monthly payment.

" . . .

"TERMINATION OF CONTRACT: This contract shall take effect on the 1st day of June, 1952, at 12:01 A. M. and shall remain in full force and effect for one year and thereafter, from year to year, unless notice of termination of this contract is given as herein provided. This contract may be terminated by either party hereto by giving at least thirty (30) days notice in writing of its election to terminate, and at the expiration of said thirty (30) day period, said contract shall be deemed and considered terminated and of no further force and effect."

It is well settled that an insurer who has adopted the custom of waiving strict compliance with provisions as to the payment of premiums is bound by the custom in the absence of notice to the contrary. If the appellant corporation is to prevail in the instant case, it must be on the theory that there was an effective oral cancellation of the insurance contract.

The evidence concerning the purported cancellation of the insurance contract consists primarily of the contradictory statements of Mr. Niles, Mr. Blomquist, and several employees of the Holsum Baking Co. Mr. Niles testified that in the telephone conversation on February 12, 1953, Mr. Blomquist told him "they had had a lot of trouble with the Bureau and they were going to cancel the contract," and that he (Mr. Niles) had consented to the cancellation. Mr. Blomquist categorically denied ever having told Mr. Niles that the contract was canceled. Mr. Grant, an employee of the Holsum Baking Co. who overheard a part of the telephone conversation, testified that Mr. Blomquist said something about having trouble for nineteen years, "and might as well cancel the contract."

As was said by the court in *In re Dand's Estate*, 41 Wn. (2d) 158, 163, 247 P. (2d) 1016:

"This case is a striking example of the wisdom of our rule that the trial court, having the witnesses before it, is in a better position to arrive at the truth than is the appellate court. The respondents are entitled to the benefit of all evidence and reasonable inference therefrom in support of

the findings of fact entered by the trial court. Two different theories were presented. The trial court rejected one and accepted the other. After an examination of the record, we cannot say that the evidence preponderates against the findings."

■ Although, generally, a cancellation of a contract of insurance must be in accordance with the provisions of the policy, nevertheless, a policy may be orally canceled by mutual consent of the parties. But to effect the cancellation of a policy, there must be an actual agreement or understanding to the effect that the policy is then and there canceled. A mere proposal, threat or offer to cancel a contract, if not acted upon, leaves the contract in force and has no effect upon the contract until it is carried into execution. *Barbour v. St. Paul Fire & Marine Ins. Co.*, 101 Wash. 46, 171 Pac. 1030; *Waterloo Lbr. Co. v. Des Moines Ins. Co.*, 158 Iowa 563, 138 N. W. 504; 51 L. R. A. (N.S.) 539; 12 Am. Jur. 1011, § 431.

■■ An insurer, in setting up cancellation as an affirmative defense to an action on a policy, has the burden of proving that the policy was canceled. Our examination of the record convinces us that the evidence does not preponderate against the trial court's finding to the effect that the appellant has failed to meet this burden. The judgment of the trial court is hereby affirmed.

HAMLEY, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.