[No. 55902–3.   En Banc.   September 21, 1989.]

LARRY G. SAUNDERS, *Petitioner,* v. LLOYD'S OF LONDON, ET AL, *Respondents.*

---

[19]*Kesinger,* at 915.

*Robert L. Henry,* for petitioner.

*MacGillivray & Jones, P.S.,* by *Richard E. Hayes* and *Susan Marie Gasch,* for respondent Lloyd's of London.

*Keefe & King, P.S.,* and *John Hunt Whaley,* for respondents Edwards.

UTTER, J.—The Court of Appeals affirmed the directed verdicts dismissing, for lack of evidence, petitioner Larry Saunders' suit to recover insurance proceeds. His policy stated that it terminated before the date the incident occurred. Saunders argues, however, that he presented sufficient evidence for jury consideration under theories of waiver, estoppel, and violation of the Consumer Protection Act. Under the facts of this case, we agree that the jury should have been allowed to consider evidence supporting estoppel as applied to the respondent insurance companies, Superior Underwriters (Superior) and Lloyd's of London (Lloyd's). The trial court properly dismissed the case against respondent Terry Edwards, who procured the insurance.

In June 1983, petitioner Larry Saunders contacted Terry Edwards to obtain insurance for a rental triplex in Spokane. At that time he made a partial premium payment of $150. Edwards secured insurance through Superior,[1] but he has no binding authority for that company.[2] Report of Proceedings, at 152, 218; exhibit 32. Mr. Edwards neither had authority to determine nor participated in determining

---

[1]The insurance secured was surplus line coverage, a type of coverage allowed for higher risk properties when regular policies are not available. RCW 48.15.040. RCW 48.18.290(5) and RCW 48.18.2901, as amended in 1986, exempt surplus line coverage from statutory expiration and renewal requirements. The amendments were passed, signed by the Governor, and filed by April 4, 1986. Laws of 1986, ch. 287, p. 1246.

[2]Binding authority allows an agent to make insurance effective on the date of application.

coverage dates, policy terms, or amount of premiums. Report of Proceedings, at 153–55; exhibit 32. On June 14, Superior issued a Lloyd's policy which stated on its face that it would be effective June 11, 1983, through June 11, 1984. Exhibit 12; Report of Proceedings, at 161. The company could elect not to renew by giving written notice 30 days prior to expiration. Exhibit 1, Insurance Contract, at 8, cl. 18. Saunders made subsequent payments to Edwards on August 1, following a June 13 invoice, and on October 5, following an August 2 invoice. Report of Proceedings, at 50, 66–67. However, Edwards paid Superior the entire balance following Superior's August billing, making up the difference and awaiting reimbursement from Saunders. Report of Proceedings, at 113–15.

On May 31, 1984, Superior sent Edwards a notice that the policy would expire June 11, and expressed willingness to renew. On June 5, Edwards sent Saunders the following premium notice for renewal covering the period from June 11, 1984, through June 11, 1985.

Exhibit 9; Report of Proceedings, at 176. After Saunders paid the premium on June 27, 1984, Superior issued a renewal on July 9, backdated to June 11, 1984.

On June 3, 1985, Edwards sent Saunders a renewal invoice. Having moved, Saunders called Edwards at his office, gave him the new address, and requested a billing at

that address. Edwards then sent a second insurance invoice on June 25, 1985. Report of Proceedings, at 73–77, 181. Saunders paid the premium on July 8, 1985. Superior renewed the policy dated August 13, again backdating coverage from June 11, 1985, through June 11, 1986.

On May 20, 1986, Edwards mailed a premium notice, apparently to the correct address. Report of Proceedings, at 21. However, later testimony reveals that the file copy contained an erasure in the box number, Report of Proceedings, at 128, and Saunders claimed he did not receive the renewal notice. In any event, he neither requested renewal nor paid the premium by June 11, 1986. He and his former wife deny receiving a renewal quote from Superior dated April 16, 1986, which stated that coverage would terminate on the expiration date if the company had not received a renewal order. Clerk's Papers, at 22, 38; Report of Proceedings, at 238–39. The insurers admit that the notice was sent to the wrong address. Clerk's Papers, at 42.

On June 28, 1986, a tree fell on Saunders' triplex causing extensive damage. Saunders contacted Edwards who, after calling Superior, informed him that the damage was not covered because his insurance policy had lapsed. Saunders offered to pay the premium but Superior rejected the offer. Report of Proceedings, at 196–97. Edwards told Saunders that he could not call Superior directly, stating that Saunders must deal with him. Report of Proceedings, at 5. Superior's phone number, however, was printed on the top of Saunders' policy. Saunders claims that neither Superior nor Edwards ever notified him that his policy would be terminated if he failed to make a prompt payment. Report of Proceedings, at 53, 136. On July 3, 1986, Superior sent Edwards a letter denying the claim for damages.

Saunders filed suit against Edwards, Superior and Lloyd's, claiming coverage under theories of estoppel, waiver, and violations of the Consumer Protection Act. Following the presentation of evidence to the jury, the trial court granted defendants' motions for directed verdict and dismissal for lack of evidence. Report of Proceedings, at

267, 288; Clerk's Papers, at 47–48. The Court of Appeals affirmed in an unpublished opinion and denied a motion for reconsideration. This court accepted Saunders' petition for discretionary review.

This case presents one issue for review. Did the trial court err by dismissing the case for lack of sufficient evidence where the insured argued theories of estoppel, waiver, and violation of the Consumer Protection Act? Insurers requested attorney fees under RAP 18.9, claiming that Saunders filed a frivolous appeal. Our resolution of the case eliminates their attorney fee argument. The insured requested attorney fees at the Court of Appeals but did not pursue that argument in his petition for review.

A trial court has no discretion in ruling on a motion for a directed verdict. *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978). It must accept as true the nonmoving party's evidence and must draw all favorable inferences from it. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 243, 744 P.2d 605 (1987). The court must deny the motion if there is any competent evidence or reasonable inference from which "reasonable minds might reach conclusions that sustain the verdict". *Lockwood*, at 243 (quoting *Levy*, at 851). A reviewing court reviews the evidence in the light most favorable to the aggrieved party and determines whether the trial court correctly applied the law. *Jones Assocs., Inc. v. Eastside Properties, Inc.*, 41 Wn. App. 462, 465, 704 P.2d 681 (1985); *Rainier Ave. Corp. v. Seattle*, 76 Wn.2d 800, 803, 459 P.2d 40 (1969).

I

The Court of Appeals stated, as a rule of law, that waiver and estoppel could not apply to insurers' practices concerning *renewal* premiums. The court quoted the following general rule:

> One may not, by invoking the doctrine of estoppel or waiver, bring into existence a contract not made by the parties and create a liability contrary to the express provisions of the contract the parties did make. The general rule is that, while an

insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel.

*Saunders v. Lloyd's of London,* unpublished opinion noted at 52 Wn. App. 1082 (1988) (quoting *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of Am.,* 189 Wash. 329, 336, 65 P.2d 689 (1937)).

The underlying rationale is that an insurance company should not be required to pay for a loss for which it received no premium. *See Saunders* (quoting *Sullivan v. Great Am. Ins. Co.,* 23 Wn. App. 242, 247, 594 P.2d 454 (1979)). That rationale supports precluding waiver or estoppel in situations where the insured attempts to broaden coverage to protect against risks not stipulated in the policy or expressly disclaimed. *See Carew; see also* Annot., 1 A.L.R.3d 1139, 1144 (1965). That rationale cannot, however, support precluding waiver or estoppel where the insurers have previously accepted premium payments for periods for which they provided *no* coverage.

"It is well settled that an insurer who has adopted the custom of waiving strict compliance with provisions as to the payment of premiums is bound by the custom in the absence of notice to the contrary." *Blomquist v. Grays Harbor Med. Serv. Corp.,* 48 Wn.2d 718, 720, 296 P.2d 319 (1956). While *Blomquist* dealt only with premiums within a policy term, the Court of Appeals has extended the principle to cover renewal premiums. *See Evans v. State Farm Mut. Auto. Ins. Co.,* 16 Wn. App. 704, 707, 559 P.2d 574 (1977).

In *Evans,* the Court of Appeals applied the *Blomquist* rule to find waiver where the question involved late payment of a premium to renew a 6-month auto insurance policy. *Evans,* at 707. In the past, the insurer had accepted late or partial payments. Moreover, the insurer had reduced the rate during the previous term and had applied the refundable amount toward the insured's next premium payment. These actions reasonably led the insureds to

believe they had continuous coverage regardless of prompt payment.

Other jurisdictions appear to have applied similar principles in the renewal premium context but, for various reasons, have not found waiver or estoppel. *See, e.g., Unigard Mut. Ins. Co. v. Fox,* 142 Ga. App. 706, 708, 236 S.E.2d 851 (1977) (noting rule ("with regard to contract deviations or mutual departure") where a 1–year fire policy expired before the fire loss, but finding that acceptance of only one late payment does not constitute a course of dealing); *Butt v. State Farm Mut. Auto. Ins. Co.,* 107 Ill. App. 3d 68, 437 N.E.2d 346, 348 (1982) (no waiver where insurer always sent a refund check for the period of noncoverage and insured received notice that there was no coverage for period between expiration date and date of payment); *Gurley v. State Farm Mut. Auto. Ins. Co.,* 101 Ill. App. 3d 619, 428 N.E.2d 916 (1981) (no waiver or estoppel where payment was made during grace period, where notice specifically stated there would not be automatic retroactive coverage unless payment was made within the 10–day grace period, and where agent repeatedly reminded insureds of the 10–day maximum late payment allowance); *Safeco Ins. Co. of Am. v. Oehmig,* 305 So. 2d 52, 54–55 (Fla. Dist. Ct. App. 1974) (insured failed to show that insurer had established a uniform course of accepting late renewal premiums where all except one or possibly two were paid within the grace period); *Harrington v. Alabama Farm Bur. Mut. Cas. Ins. Co.,* 295 So. 2d 210 (La. Ct. App. 1974) (auto insurer's acceptance of only one postdated check more than 10 days after the renewal date does not show custom); *see also* 22 J. Appleman, *Insurance* § 13006, at 320 (1979) ("And a waiver may be found of payment of a renewal premium through the agent's statements and acts"); *State Farm Mut. Auto. Ins. Co. v. White,* 563 F.2d 971, 974 n.3, 975–76 (9th Cir. 1977) (discussing the possibility of estoppel with regard to a renewal premium but finding none).

We recognize that some courts do not apply waiver or estoppel theories where renewal premiums are involved.

*See, e.g., Stueck v. Le Duc,* 57 Wis. 2d 735, 205 N.W.2d 139 (1973) (no estoppel where insurer's offer to renew expires before insured tenders payment); 6 G. Couch, *Insurance* § 32:372, at 695 (2d ed. 1985); *National Life & Accident Ins. Co. v. Casillas,* 63 S.W.2d 396 (Tex. Civ. App. 1933) (no waiver—renewal of month–to–month policy requires payment of premium); *National Life & Accident Ins. Co. v. Reams,* 197 S.W. 332, 335 (Tex. Civ. App. 1917) (although insurer had accepted a great many late payments, it had never accepted a late payment after an accident, and the insurer had the option to renew each month by accepting or rejecting payment); *Universal Underwriters Lloyds v. Sulik,* 286 S.W.2d 655 (Tex. Civ. App. 1956) (custom cannot extend the period of coverage).

In *Stueck,* the court reasoned that policy renewal requires all of the elements of contract formation. Notices sent to the insured are offers to renew; the insured must accept the offer or the insurer is not bound. Insurer's conduct indicating a renewal does not establish a renewal unless it is then binding on both the insurer and insured. *Stueck,* 205 N.W.2d at 142. Even in *Stueck,* though, the court quoted from a previous case recognizing that the custom of an insurance company to automatically renew a policy and then bill the customer can estop the denial of coverage. *Stueck,* 205 N.W.2d at 143.

In the present case, the insurer never issued a renewal policy until after payment. Technically, the facts do not support automatic renewal. Nonetheless, the rationale underlying the consideration of cases under the doctrine of election provides support, by analogy, for applying waiver or estoppel in a renewal situation.

The doctrine of election can apply where an insurer accepts a late premium payment and later discovers a claim for an accident occurring before the premium was tendered. Where the insurer has accepted such late payments for more than 1 year, it is put to an election: it must treat all late payments the same.

Limiting an insurer's range of choice in dealing with the late premium payment is particularly warranted on the basis that insurers should not be allowed to routinely apply premiums to the period that precedes the date for which late premiums were received when no casualty occurs, but remain free to treat differently those few instances of late premium payments when a subsequent claim discloses that the payment was tendered after a loss had occurred.

R. Keeton & A. Widiss, *Insurance Law* § 6.8(c)(3), at 720 (1988); *see also Laverty v. Hawkeye Sec. Ins. Co.*, 258 Iowa 717, 140 N.W.2d 83, 87–89 (1966) (applying the principle of estoppel where 7–year period of automatic renewal, late payments, and acceptance of late payment in year of loss).

The authors discussed the underlying rationale in terms of an insurer taking "unconscionable advantage" of an insured:

These decisions hold, either implicitly or explicitly, that the insurer would be taking an unconscionable advantage if it were allowed to choose, case by case, the course which would be most advantageous in each instance. Decisions imposing liability when the tender of a renewal premium is accepted by an insurer after the occurrence of a loss are probably best understood as responses to an insurer's effort to gain unconscionable advantage in the insurer's treatment of a whole body of instances.

R. Keeton & A. Widiss § 6.2(b), at 626.

Respondents have presented no sound reasons for foreclosing the application of waiver or estoppel in the renewal premium context. Therefore, we conclude that an established course of conduct may preclude an insurance company from denying coverage in some situations involving late payment of renewal premiums. Two questions remain: first, whether waiver or estoppel provides the proper doctrine; and second, whether the facts of this case are sufficient to present the question to the jury.

█ Case law indicates that courts often tend to consider issues of waiver and estoppel interchangeably. The different focus of each, however, requires separate analysis. Waiver requires that the insurers voluntarily and intentionally relinquished a known right or that their conduct "warrants an inference of the relinquishment of such right." *PUD 1 v.*

*WPPSS,* 104 Wn.2d 353, 365, 705 P.2d 1195 (1985). *Voluntarily* implies a choice, a conscious decision to relinquish a right; conduct giving rise to a waiver argument cannot be consistent with any other interpretation than intent to waive. *PUD 1,* at 365. A person must know that certain conduct has the effect of relinquishing a right. *McDaniels v. Carlson,* 108 Wn.2d 299, 308, 738 P.2d 254 (1987). The focus for waiver, then, is on the insurer, not on the insured.

While a case for waiver can be argued, we do not find that the insurers knew that conduct with respect to renewal premiums could invoke the waiver doctrine. This court had not previously addressed the issue. Varying treatment of the issue by other courts indicated a potential problem but provided no clear resolution. Although waiver is inapplicable here, the doctrine of estoppel provides a proper theoretical underpinning for this case.

■ Equitable estoppel focuses on the insured's justifiable reliance. *Buchanan v. Switzerland Gen. Ins. Co.,* 76 Wn.2d 100, 108, 455 P.2d 344 (1969). It has three elements:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*McDaniels,* at 308 (quoting *Harbor Air Serv., Inc. v. Board of Tax Appeals,* 88 Wn.2d 359, 366–67, 560 P.2d 1145 (1977)). Additionally, in some contexts it requires that the party claiming injury by conduct of another have no knowledge of the true facts or no means of acquiring the facts. *PUD 1,* at 365. The reliance must be *reasonable, Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 280–81, 461 P.2d 538 (1969), but estoppel can arise by silence when one has a duty to speak out, *McDaniels,* at 308.

The Court of Appeals found there could be no estoppel because Saunders had the policy and, therefore, had knowledge of the essential facts. This resolution begs the issue. The "knowledge of the true facts" analysis in *PUD 1*

involved a question of the validity of certain "Participant Agreements" and their relationship to other loan agreements. The court reasoned that either party could have brought a declaratory action to determine the legality of the participant agreements. Furthermore, both parties knew that the loan agreements did not depend on the validity of the participant agreements. 104 Wn.2d at 366. Under those circumstances where both parties can determine the law and have knowledge of the underlying facts, there can be no estoppel. *See also Chemical Bank v. WPPSS*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984).

In stating the rule, those cases relied on *Leonard v. Washington Employers, Inc., supra,* and *Wechner v. Dorchester,* 83 Wash. 118, 145 P. 197 (1915). In *Leonard,* an employee had relied on an outline of a proposed pension provision, knowing that the final pension plan was available for his inspection. In those circumstances, where the employer had not represented anything following the adoption of the plan, the employee had no right to rely on the earlier outline. *Leonard,* at 281. In *Wechner,* the alleged estoppel involved title to certain real property that had been subject to a complicated series of transfers. The court found no estoppel where both parties had complete knowledge of the transfers and *neither party made any representations or deceptions* concerning them. 83 Wash. at 122.

If the *PUD 1* requirement of no knowledge of essential facts were applied without regard to context, there could never be estoppel where the insured could refer to a policy. Previous case law in this state, however, does not preclude estoppel where a party's conduct *subsequent* to issuance of a policy misleads another party. *See Buchanan,* 76 Wn.2d at 108–09 (insurance adjuster's statements or conduct could estop insurer from asserting rights it would otherwise have under the policy).

The focus in estoppel must be on whether Saunders justifiably relied on the insurers' practice of accepting late payments, delaying issuing the policy, and backdating coverage without notifying the insured of any gap in coverage

or providing a refund. The specific question for this court is whether Saunders presented sufficient evidence, considering the evidence in the light most favorable to Mr. Saunders, to take the case to the jury. The facts presented require that we separately consider the potential application of estoppel to Mr. Edwards and to Superior Underwriters and Lloyd's.

■■ Mr. Edwards had no part in establishing coverage dates, premium rates, or dates of issuing policies. In 1984 and 1985, his actions were limited to accepting the late payments and transferring them to the insurers. The record is silent about whether he accepted a full commission for each of those years. In August 1983, he did prepay Superior the balance of Saunders' account and awaited repayment by Saunders in October. One instance, by itself, will not establish a course of conduct that will support waiver or estoppel. *See Okamura v. Time Ins.' Co.,* 24 Utah 2d 209, 468 P.2d 958, 959 (1970). Moreover, the handling of a premium payment within a policy period cannot, by itself, lead an insured to reasonably believe that a renewal payment will be handled the same way. *Williams v. Prudential Ins. Co. of Am.,* 447 So. 2d 685 (Ala. 1984).

At no time did Mr. Edwards indicate that there was a problem with late payments, even though he believed that Mr. Saunders would not be covered during the interim periods in 1984 and 1985. The renewal notices sent by Edwards to Saunders neither specify a payment date nor state that coverage will terminate if payment is not received by the policy expiration date. See exhibit 9. However, because Mr. Edwards did not participate in the policy of backdating, he could be liable only if he were under a duty to speak. Saunders neither specifically argued that Edwards had a duty to speak nor presented any case law to support such a duty; under these facts there is no liability on Edwards' part.

The insurers had sole control over policy issuance and dates of coverage. After receiving late orders for renewal in 1984 and 1985, they backdated the policies to June 11 each time. In 1985, Saunders paid the premium July 8, but the insurers did not issue the policy until August 13, still backdating it to June 11. They neither notified Saunders that there was no coverage for the period between expiration and payment, nor refunded a portion of the premium for the period of noncoverage. Saunders claims he did not receive a notice from Superior dated April 16, 1986, stating that the policy would terminate if not renewed before the expiration date. The notice was sent to the wrong address. The question is whether these facts are sufficient to present a question of estoppel to the jury. We find that they are. Reasonable minds could conclude that the insured justifiably relied to his detriment on the insurers' practices of backdating to believe that prompt payment was not necessary for continuous coverage.

## II

In the Court of Appeals, petitioner argued that he had presented sufficient evidence to establish a prima facie case for a Consumer Protection Act violation. Washington's Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce", RCW 19.86.020, and provides a private right of action, RCW 19.86.090. To recover under the Consumer Protection Act, a private party must prove that a defendant's act or practice (1) is unfair or deceptive, (2) that it occurred in trade or commerce, (3) that it affects the public interest, and that it (4) caused (5) injury to plaintiff in his or her business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Both the trial court and Court of Appeals found Saunders had presented insufficient evidence for the first

element: that the backdating practices were deceptive or unfair. *See Saunders v. Lloyd's of London, supra*; Report of Proceedings, at 286. Because the act does not define "unfair" or "deceptive," this court has allowed the definitions to evolve through a "gradual process of judicial inclusion and exclusion". *See State v. Reader's Digest Ass'n, Inc.*, 81 Wn.2d 259, 275, 501 P.2d 290 (1972), *appeal dismissed*, 411 U.S. 945 (1973), *modified in Hangman Ridge*, at 786.

▮▮ To date we have recognized that consumers may establish the first element in two ways. They may show either that an act or practice "has a capacity to deceive a substantial portion of the public," or that "the alleged act constitutes a per se unfair trade practice." *Hangman Ridge*, at 785–86. Saunders' Court of Appeals brief presented neither argument nor authority for applying the capacity to deceive principle.

In support of an alleged per se unfair trade practice, Saunders claims the backdating practice violated two statutory provisions regulating insurers. The first provides in part that insurers "be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030. The second prohibits insurers from engaging in unfair or deceptive practices as defined by regulations promulgated by the Insurance Commissioner. RCW 48.30.010(1), (2); *Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 820, 725 P.2d 957 (1986). The regulations state, in part, that it is unfair to misrepresent pertinent facts or policy provisions and to refuse to pay claims without reasonable investigation. WAC 284–30–330. That provision currently states that it is "specifically applicable to the settlement of claims." Although in 1986 the provision did not include those words, WAC 284–30–350 defined misrepresentation as of the time the claim is presented. Saunders does not allege that there were any misrepresentations at that time. Again, Saunders presents neither case authority nor analysis for finding the practices of backdating fit within the meaning of the regulations.

The Court of Appeals properly held that the insurance company's investigation was reasonable under the circumstances of the case. *See Villella,* at 820–21. The policy had expired by its terms, and Saunders had neither requested renewal nor paid the premium. An insurer's reasonable denial of coverage does not constitute an unfair practice. *Villella,* at 821.

Considering the argument and authority presented to the Court of Appeals, we find that Saunders presented insufficient argument, evidence, and authority for establishing a per se unfair act. Furthermore, petitioner presented no Consumer Protection Act argument in his petition for review; his grounds for review do not even specifically mention the act. Absent adequate, cogent argument and briefing, we decline to wander through the complexities of the Consumer Protection Act.

The trial court properly dismissed the Consumer Protection Act claims. We remand for trial for jury consideration of whether the insurers should be estopped from denying coverage under these facts.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.

DORE, J., concurs in the result.