

2015 JUN 15 AM 9: 14

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 71391-4-I |
| AMANDA J. HALLIGAN, | ) | |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| and | ) | |
| | ) | |
| JOHN K. HALLIGAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 15, 2015 |
| | ) | |

LAU, J. — John Halligan appeals from a final dissolution decree. He contends that the trial court erred in valuing and characterizing assets, excluding an expert witness, and awarding attorney fees. Because he fails to demonstrate that the trial court abused its broad discretion in evidentiary and property matters, we affirm.

## FACTS

John and Amanda Halligan married in September 1995 and separated in June 2012. Their son was born in 2011. John[1] has degrees in aeronautical engineering

---

[1] For purposes of clarity, we refer to the parties by their first names.

and in systems engineering. At the time of trial, he was a manager for an information technology corporation. He is also in the Navy Reserve. His gross monthly income, including military pay, is about $13,000. Amanda has a degree in journalism and is the co-owner of a political consulting business. Her gross monthly income is about $3,200.

The court found that the parties had community and separate assets totaling about $564,000, of which the court distributed 60 percent to Amanda and 40 percent to John. The court awarded Amanda monthly maintenance of $3,500 for five years.

On September 23, 2013, following a four-day trial, the court entered findings of fact, conclusions of law, and a final decree of dissolution. John appeals.[2]

## DECISON

### Raytheon Pension

John worked for Raytheon until 2008. He contends that the trial court erred in relying on an expert witness's opinion to determine the present value of his vested Raytheon pension. He argues that because the expert's opinion rested on an erroneous assumption about the pension plan's early retirement benefits, the court significantly overvalued the asset. Based on the record before us, however, John fails to demonstrate a reversible abuse of discretion.

Prior to trial, the parties jointly retained Steven Kessler, an experienced certified public accountant, to calculate the value of their retirement plans, which included John's Raytheon and military pensions and Amanda's federal pension. To

---

[2] John has not raised child support or parenting issues on appeal.

determine the present value of John's Raytheon pension, Kessler relied in part on a 2008 letter that Raytheon sent to John after he terminated his employment.

The letter informed John that he was entitled to receive monthly pension payments of $450.88 beginning at age 65. The letter also advised that John could elect to begin pension payments at age 55, "actuarially reduced for Early Retirement,"[3] and referred him to the Raytheon Summary Plan Description (SPD) for "further clarification."[4]

On August 10, 2013, nine days before trial began, Kessler provided a written opinion to the parties. Based on a list of enumerated facts, including the $450.88 monthly benefit listed in the 2008 Raytheon letter, Kessler estimated the present value of the Raytheon pension, "using discounted present value analysis,"[5] as follows:

> In my opinion, the total present value of Mr. Halligan's pension benefit with retirement at age 65 is $16,044 . . . .
> In my opinion, the total present value of Mr. Halligan's pension benefit with retirement at age 55 and assuming no reduction in benefits is $34,052 . . . .[6]

The record does not indicate whether Kessler received or reviewed the Raytheon SPD before preparing his opinion.[7]

---

[3] Exhibit (Ex.) 19.
[4] Ex. 19.
[5] Ex. 20.
[6] Ex. 20.
[7] John asserts that shortly before Kessler prepared his opinion, both parties "attempted to inform" Kessler about the provisions of the SPD "but for some reason, he didn't receive or use the information." Br. of Appellant at 7. But he has not identified any evidence in the record supporting this assertion.

At trial, Kessler identified his report, which was admitted without objection as exhibit 20. During cross-examination, John's attorney questioned Kessler at length about John's military pension and the general propriety of calculating the present value of pensions for purposes of dissolution, but did not challenge his valuation of the Raytheon pension.

Two days later, during his direct testimony, John expressed concern about Kessler's calculation of the present value for the Raytheon early retirement plan because it was based on the inaccurate assumption of "no reduction in benefits." The trial court permitted John to read into evidence the following provision from the Raytheon SPD:

> Once you reach age 55 and you are vested, you are eligible to begin receiving your pension. If you begin receiving your pension before your Social Security retirement date, your pension may be reduced actuarially from that Social Security date or reduced by one-half of one percent for each month your annuity start date precedes your Social Security retirement date if that provides a larger pension.
> However, your pension is the same as the amount payable at your Social Security retirement date, if your Raytheon employment ends, or if you are laid off from Raytheon within three years before that date and you have completed 10 years of continuous service at that time.[8]

John testified that he used the formula in the Raytheon SPD to determine that the monthly benefit for retirement at age 55 would be $180.35, or a 60 percent reduction from the monthly benefit at age 65. But the trial court sustained repeated objections to John's qualifications when he attempted to offer his recalculated

---

[8] Report of Proceedings (RP) (Aug. 22, 2013) at 40-41.

present value based on "the methodology used by Kessler."[9] The trial court eventually admitted the SPD in its entirety as exhibit 133.

On appeal, John contends that the trial court erred in relying on Kessler's opinion for the value of the Raytheon early retirement pension because the opinion was based on the faulty assumption of "no reduction in benefits." He argues that based on his calculations of the reduced monthly benefits for early retirement, the court "should have asked for recalculation of the present value."[10] But the evidence before the trial court on value must be viewed in context.

The trial court has wide latitude in valuing assets in a dissolution proceeding and in determining the weight to give expert opinion. See In re Marriage of Sedlock, 69 Wn. App. 484, 490, 849 P.2d 1243 (1993). If the court's valuation of an asset falls within the range of expert testimony, and is otherwise reasonable in light of conflicting evidence, substantial evidence supports the decision, and we will not disturb it on appeal. Sedlock, 69 Wn. App. at 490.

Kessler's opinion about the present value of the Raytheon pension was admitted without objection. During cross examination, counsel for John did not ask Kessler whether he had reviewed the SPD. Nor did counsel ask Kessler to explain the assumption of "no reduction in benefits," the nature of his application of the "discounted present value analysis" to the Raytheon pension benefits, or the effect of a reduced monthly payment on the calculation of the present value. Although John later testified that he had calculated a reduced monthly benefit if he retired at 55, the

---

[9] RP (Aug. 22, 2013) at 45.
[10] Br. of Appellant at 28.

trial court excluded his proposed recalculation of the pension's present value. On appeal, John has not challenged the trial court's evidentiary rulings.

Because Kessler's opinion was essentially unchallenged, and John failed to present any conflicting admissible evidence of the present value, we cannot say that the trial court's decision to rely on Kessler's opinion was unreasonable or an abuse of discretion. Substantial evidence supports the trial court's finding that the present value of the Raytheon pension for early retirement was $34,052.

Attorney Fees

John contends that the trial court erred in awarding a portion of the attorney fees that Amanda incurred based on her need and his ability to pay. Under RCW 26.09.140, the trial court may order a party in a dissolution action to pay reasonable attorney fees after balancing the requesting party's needs against the opposing party's ability to pay. In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). We review the trial court's decision to award attorney fees for an abuse of discretion. Mattson, 95 Wn. App. at 604. The party challenging the decision to deny attorney fees must establish that "the court used its discretion in an untenable or manifestly unreasonable manner." Mattson, 95 Wn. App. at 604.

The trial court found that Amanda had incurred attorney fees and costs totaling $60,621. The court further found that the amount was reasonable given the complexity of the issues and the length of trial, and awarded $18,000 in fees.

On appeal, John contends that in addition to the disproportionate 60/40 distribution of community property, the trial court failed to consider (1) the disparity in the parties' liquid assets following dissolution, (2) the debt allocated to him, and

(3) his monthly expenses, including $3,500 in maintenance payments and child support that remained following the dissolution. He contends that the evidence established his inability to pay Amanda's attorney fees and her ability to pay her own attorney fees.

In making its decision, the trial court necessarily had all of the parties' financial information before it. The trial court noted that John's gross monthly income of $13,049 was substantially more than Amanda's gross monthly income of $3,231 and that John "has a rewarding career . . . at which he has been very successful."[11] The court also noted that Amanda had a monthly shortfall of about $3,800 in meeting her expenses, which was mostly covered by the court's award of $3,500 in maintenance per month for five years. The court expressly found that Amanda had a need for a partial award of attorney fees and that John had the ability to pay some of the fees. Even considering the characterization and distributing of the parties' assets and obligations and the parties' relative income and expenses, we cannot say that the trial court abused its discretion in awarding Amanda a portion of her attorney fees.

Exclusion of Expert Witness

John contends that the trial court erred in excluding the testimony and report of Neil Bennett, a vocation counselor, as a sanction for late disclosure. He argues that the disclosure was not really late, that any late disclosure was not willful, and that the trial court failed to consider lesser sanctions. Many of John's factual assertions are unsupported by citations to the record, in violation of RAP 10.3(a)(6).

---

[11] Clerk's Papers (CP) at 168.

The parties initially identified their witnesses in accordance with the order setting domestic case schedule, which required disclosure of possible primary witnesses by February 2, 2013, and disclosure of possible additional witnesses by March 18, 2013. Trial was originally set for May 20, 2015. On March 4, 2013, the parties stipulated to a continuance of the trial date to August 19, 2013, in order to participate in mediation. The court did not issue a revised case schedule.

On May 20, 2013, Amanda's counsel, Rosemarie LeMoine, notified John's counsel, H. Michael Finesilver, that she would be out of the country from June 3, 2013, until July 11, 2013. LeMoine also served a notice of association, designating an additional attorney for the case.

On June 25, 2013, Finesilver filed a disclosure of possible primary witnesses that identified several new witnesses, including Neil Bennett. Finesilver did not identify the nature of Bennett's opinions until July 3, when he emailed Bennett's report to LeMoine, who was still out of the country on vacation. LeMoine was unable to open the attachment to the email while on vacation, and she did not see the report until July 25, when she received a hard copy. Finesilver did not email Bennett's report to the associated counsel.

LeMoine objected to the late disclosure of witnesses and moved to strike Bennett's testimony and the testimony of two other witnesses. Following a hearing, the trial court granted the motion and excluded the three witnesses and their reports.[12]

---

[12] On appeal, John challenges only the exclusion of Bennett's testimony.

The trial court generally has broad discretion when imposing sanctions for discovery violations. Blair v. Ta-Seattle E. No. 176, 171 Wn.2d 342, 348, 254 P.3d 797 (2011). But when the court imposes a severe sanction such as witness exclusion, the record must clearly demonstrate that the court considered (1) whether the violation was willful or deliberate; (2) whether the violation substantially prejudiced the opponent's ability to prepare for trial; and (3) whether a lesser sanction would probably suffice. Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997); see also Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006); Teter v. Deck, 174 Wn.2d 207, 274 P.3d 336 (2012).

Here, the parties discussed the Burnet factors in detail during the hearing on Amanda's motion to strike, and the court expressly incorporated the factors into its oral and written decisions. The court found that Finesilver disclosed the three new witnesses several months after the case scheduling deadlines and provided their reports after the discovery cutoff date based on the August 19 trial date. See King County Local Rule 37(g) (in family law proceedings, discovery must be completed 35 days before trial date unless court orders otherwise). The court rejected Finesilver's claim that the continuance automatically extended all discovery deadlines without entry of a new case scheduling order or the court's approval and that he had effectively provided LeMoine with Bennett's report on July 3, leaving her plenty of time to complete discovery before trial.

The court found that Finesilver had intentionally disclosed the witnesses at a time when he knew LeMoine was out of the country and unable to respond. The court further noted that counsel had not sent the report to associated counsel, even

though LeMoine had notified Finesilver of the association before leaving the country. The court found that under these circumstances, the late disclosure was willful.

The court also found that the late disclosure of the witnesses' reports substantially prejudiced Amanda's ability to prepare for trial. Bennett's report indicated that Amanda was "capable of earning a large salary immediately,"[13] an issue critical to Amanda's request for maintenance. The court noted that Amanda's counsel would have rebutted Bennett's evidence with additional discovery and expert testimony if the time would have permitted.

Finally, the court expressly asked the parties to address the availability of lesser sanctions at the hearing on the motion to strike. LeMoine did not receive Bennett's report until after the discovery cutoff, when only about three weeks remained until trial. She argued that the only option at that point would have been a significant trial continuance and a court order with new discovery deadlines so that she could schedule a deposition of Bennett and hire an opposing expert. In rejecting lesser sanctions, the trial court noted that despite the late disclosure, opposing counsel had made no effort to make the witnesses available for depositions or otherwise attempted to facilitate discovery.

The record clearly demonstrates that the trial court considered all three <u>Burnet</u> factors on the record. John has failed to demonstrate that the court abused its discretion in excluding Bennett's testimony.

---

[13] CP at 200.

-10-

Post-Separation Payments to Fidelity 401(k)

John contends that the trial court erred in refusing to characterize the $7,039 in post-separation payments that he made into his Fidelity 401(k) plan as separate rather than community property. He argues that the trial court's unexplained decision was inconsistent with the parties' agreement about the characterization of the payments and with the court's treatment of post-separation payments that he made into a different 401(k) plan. He maintains that he is entitled to a refund of the 60 percent of the $7,039 that the court awarded to Amanda.

John's arguments ignore critical portions of the trial court's ruling. Although the Fidelity 401(k) plan was in John's name, the entire account was accumulated during the marriage and was therefore community property. During the marriage, the parties borrowed from the Fidelity 401(k) plan to buy property in Ronald, Washington. After the parties separated in 2012, they entered into an agreed temporary order that assigned the debt on the property to John. His post-separation payments to the Fidelity 401(k) were therefore intended to service the outstanding debt on the loan.

The trial court expressly noted that the parties' agreed temporary order "[did] not provide for reallocation of the debt payments" and therefore found "no reason to credit the husband for payments made on the Ronald property, pursuant to the agreed temporary order."[14] John has not demonstrated any error or abuse of discretion in the trial court's decision.

---

[14] CP at 165.

Moreover, mischaracterization of property is not grounds for setting aside the trial court's property distribution if the division of the property is fair and equitable. In re Marriage of Gillespie, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997). Here, the record clearly establishes that the characterization of John's post-separation payments was not crucial to the trial court's decision. See In re Marriage of Langham & Kolde, 153 Wn.2d 553, 563 n.7, 106 P.3d 212 (2005) (remand necessary only if characterization crucial to the distribution). John has not addressed or challenged the trial court's reasoning. Nor has he alleged that 60/40 percent property division was inequitable.

Federal Tax Exemption

John contends that the trial court erred in allocating Amanda the federal income tax exemption in all years, rather than in alternating years. He suggests that the decision "may have been a scrivener's error."[15]

Contrary to John's assertions, however, the record indicates that the parties agreed to the allocation of the exemption to Amanda during negotiations over child support payments. John fails to identify any error or abuse of discretion.

Verification of Work-Related Daycare Expenses

John contends that the trial court erred in denying his request for "proof of work-related daycare expenses"[16] that he agreed to pay under the terms of the parties' agreed temporary order. He asserts that "the unique nature of Amanda's

---

[15] Br. of Appellant at 46.
[16] Br. of Appellant at 46.

work and daycare situation provide[s] potential for abuse of the support order."[17] But John has not supported his conclusory allegations of error with any meaningful legal argument or citation to relevant authority. We therefore decline to consider them. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

Attorney Fees on Appeal

Amanda has requested an award of attorney fees on appeal based on her need and John's ability to pay. See RCW 26.09.140. She has submitted an affidavit in accordance with RAP 18.1(c).[18] After consideration of the affidavit, we decline to award attorney fees on appeal.

Affirmed.

WE CONCUR:

---

[17] Br. of Appellant at 47.

[18] John has filed a motion to exclude Amanda's affidavit, alleging, among other things, that it was untimely. He is incorrect. See RAP 18.6(a) (in computing period of time under the Rules of Appellate Procedure, the last day of the period "is included, unless it is a Saturday, Sunday, or legal holiday." The motion to exclude is denied.