# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 74916-1-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOHN CALVIN COLEMAN III, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 7, 2017 |
| | ) | |

DWYER, J. — A jury found John Coleman III guilty of felony hit and run. On appeal, he contends that the trial court erred in failing to sever his trial from his codefendant's trial. But because Coleman did not move for severance, he has waived the issue. Coleman's claims of ineffective assistance and sentencing error are also without merit. We affirm.

I

On the evening of October 18, 2013, 21-year-old Natsanet Asegay asked her parents to babysit her baby daughter while she went out with her friend Malika Pa. Around midnight, Pa drove by in a black Acura SUV and picked up Asegay. Pa then picked up two other friends, Briana Manson and Kelani Duell, and drove to an International House of Pancakes (IHOP) on Capitol Hill.

After hanging out at the IHOP for a couple of hours, Pa and her friends left and drove to a nearby gas station. Several individuals, including Coleman, also left the IHOP and followed in other cars.

Duell testified Pa had been drinking and was "a little turned up." Duell argued with Pa about her driving and told her to slow down.

After leaving the gas station, the caravan of five or six cars proceeded southbound on 23rd Avenue South, with a posted speed limit of 30 miles per hour. Coleman was driving the lead vehicle, a silver Saturn.

The music in Pa's car was loud as she drove away from the gas station. All of the young women were "dancing and goofing around in the car." Pa "just wanted to do her own thing" and did not pay attention to the passengers' complaints about her erratic driving. Manson estimated that Pa was traveling about 50 miles per hour. Duell testified that Pa was "speeding" and "swerving" and estimated she was going about 60 miles per hour.

As the cars approached King Street, Pa pulled out into the oncoming lane of traffic and accelerated to pass the cars in front of her. At about the same time, Coleman slowed and began a left turn onto King Street. Pa's car struck Coleman's car at high speed and flipped several times before crashing into a light pole. Coleman's Saturn came to rest about 100 feet from the intersection.

Asegay was ejected through the Acura's sunroof. She died at the scene from massive head trauma. Manson crawled out of the wreckage through the sunroof and then pulled Duell out. Duell suffered a fractured femur.

When Seattle Police officers arrived a few minutes after the accident, both Pa and Coleman had left the area. Pa returned a few hours later with her mother and spoke to the police. Coleman did not return.

While attempting to determine who had been driving the Saturn, Detective Thomas Bacon spoke with Coleman by phone on October 22, 2013. Coleman admitted that he was driving the Saturn at the time of the crash. He explained that he was at the IHOP and had driven off with the other cars. Coleman was on his way to a friend's house to "chill the rest of the night" when the Saturn was "sideswiped" as he attempted to turn left. Coleman estimated he was at the scene for "three [or] four minutes max," but also claimed he stayed until an ambulance arrived. Coleman also said that he made no attempt to call the police.

A few days after the accident, Coleman sent a text message to Asegay's sister, expressing his condolences and admitting he drove the other car in the accident. Coleman acknowledged he had fled the scene, but claimed he "made sure my bro Ray called the ambulance."

The State charged Coleman with one count of felony hit and run. Pa was charged with vehicular homicide, vehicular assault, felony hit and run, and two counts of reckless endangerment. Following a joint trial, the jury found both defendants guilty as charged. The court sentenced Coleman to a low-end standard term of 41 months.

## II

Coleman contends the trial court erred in failing to sever his trial from his codefendant's trial. He argues that the severity of the multiple charges involving Pa and the related evidence necessarily prejudiced the jury's consideration of his case.

The trial court has broad discretion to grant a severance if "deemed appropriate to promote a fair determination of the guilt or innocence of a defendant."

CrR 4.4(c)(2)(i); In re Pers. Restraint of Davis, 152 Wn.2d 647, 711, 101 P.3d 1 (2004). But the failure to move for severance results in a waiver of the issue. CrR 4.4.(a)(1) (severance is waived if defendant does not move for severance before trial or before or at the close of evidence); see also State v. Emery, 174 Wn.2d 741, 754, 278 P.3d 653 (2012).

Coleman never requested to be tried separately. He has therefore waived the severance issue.

Coleman claims the joint trial resulted in a "manifest error affecting a constitutional right" that this court may review under RAP 2.5(a). But he has not provided any meaningful argument to support this conclusory assertion. We therefore decline to consider it. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

III

Coleman contends that he was denied effective assistance when defense counsel failed to move for a separate trial, thereby waiving the severance issue. We disagree.

To establish ineffective assistance, Coleman must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "If either element of the test is not satisfied, the inquiry ends." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177

(2009). A claim of ineffective assistance is a mixed question of law and fact that we review de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

"To establish prejudice based on an improper joint trial, a defendant must show that a competent attorney would have moved for severance, that the motion likely would have been granted, and that there is a reasonable probability he would have been acquitted at a separate trial." Emery, 174 Wn.2d at 755. Coleman cannot satisfy this standard.

Separate trials for codefendants are disfavored in Washington "because of concerns for judicial economy, '[f]oremost among these concerns is the conservation of judicial resources and public funds.'" Davis, 152 Wn.2d at 711 (alteration in original) (quoting State v. Bythrow, 114 Wn.2d 713, 723, 790 P.2d 154 (1990)). "A defendant seeking to sever trial from a codefendant has 'the burden of demonstrating that a joint trial would be so manifestly prejudicial as to outweigh the concern for judicial economy.'" Davis, 152 Wn.2d at 711-12 (quoting State v. Hoffman, 116 Wn.2d 51, 74, 804 P.2d 577 (1991)).

Coleman contends that the number and severity of Pa's offenses and the attendant emotional consequences precluded the jury from fairly assessing the law and facts involving his single, less serious offense of felony hit and run. In particular, Coleman points to the fact that "[t]he jury was actually made to see the homicide being committed and all such evidence turned out very seriously against Mr. Coleman."

Coleman's arguments appear to rest primarily on the faulty assumption that the jury in a separate trial would not have learned that the accident involved a death

or serious injury. But the State charged Coleman with felony hit and run under RCW 46.52.020(4)(a) and (b), which required the jury to determine whether the accident involved a death or injury. Consequently, even in a separate trial, the jury would have learned of Asegay's death and Duell's serious injury.

Moreover, the trial court instructed the jury that

A separate crime is charged in each count. You must separately decide each count charged against each defendant. Your verdict on one count as to one defendant should not control your verdict on any other count or as to any other defendant.

Jury Instruction 9. We must presume that the jury followed these instructions and applied the correct legal standards in reaching its decision. See Strickland, 466 U.S. at 695 (when assessing whether counsel's deficient performance prejudiced the defendant, a reviewing court must presume "that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision").

Coleman's claim that the jury's verdict was based on emotion rather than on the facts and the law is too speculative to establish that the result of a separate trial would have been different. Because Coleman fails to establish any resulting prejudice, we need not determine whether counsel's failure to seek severance was deficient performance.

IV

Coleman contends that the trial court erred in not imposing an exceptional sentence below the standard range. He argues that the court's failure to consider his request for an exceptional sentence constituted a reversible abuse of discretion.

Under the Sentencing Reform Act, the sentencing court must generally impose a sentence within the standard sentencing range. RCW 9.94A.505(2)(a)(i); State v. Graham, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). The court may impose a sentence outside the standard range if it finds "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. RCW 9.94A.535(1) sets forth a nonexclusive list of mitigating circumstances that authorize an exceptional sentence below the standard range if the court "finds that mitigating circumstances are established by a preponderance of the evidence."

With few exceptions, the defendant may not appeal a sentence within the standard range. RCW 9.94A.585(1). Review of the court's refusal to impose an exceptional sentence downward is also limited:

> review [of an exceptional sentence below the standard range] is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances . . . . Even in those instances, however, it is the refusal to exercise discretion or the impermissible basis for the refusal that is appealable, not the substance of the decision about the length of the sentence. Conversely, a trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling.

State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Coleman requested an exceptional sentence based on RCW 9.94A.535(1)(e) ("The defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired.") and RCW 9.94A.535(1)(f) ("The offense was principally accomplished by

another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.").

At sentencing, the court considered a lengthy argument from the parties about Coleman's request for an exceptional sentence. The court correctly noted that causation was not an element of felony hit and run and that the fact Coleman did not cause the accident was not a circumstance that can support an exceptional sentence. Coleman never identified any evidence suggesting that the accident significantly impaired his capacity to appreciate the wrongfulness of his conduct.

After reviewing some of the salient circumstances of Coleman's offense, the court concluded:

> I can't find any substantial and compelling reasons to do that. The ones that we're talking about here are not legally justifiable.

The record provides no support for Coleman's claim that the trial court "refused to even consider the mitigating factors." Viewed in context, the court clearly considered the relevant facts and legal arguments and exercised its discretion in denying the request for an exceptional sentence. Accordingly, Coleman cannot appeal his standard range sentence.

V

Coleman raises several additional cursory allegations that defense counsel was constitutionally deficient. He contends that counsel failed to cross-examine "numerous witnesses" who could have given "insight" into his actions after the accident, failed to object to the admission of Coleman's statements to Detective Bacon, failed to call "readily available" witnesses who could have testified to his

actions after the accident, failed "to produce a witness" who could have laid a foundation for the admission of the 911 recording, and failed to fully raise the issue of partial compliance with the hit and run statute.

Coleman presents no legal argument establishing that any of counsel's alleged omissions constituted deficient performance. Nor has he identified any of the witnesses that counsel should have called or their potential testimony. Moreover, the allegations regarding additional witnesses and further cross-examination of the State's witnesses all involve matters outside the record that this court cannot consider in a direct appeal. See McFarland, 127 Wn.2d at 337-38.

Coleman fails to demonstrate ineffective assistance.

Affirmed.

We concur: