[No. 29144. Department Two. December 13, 1943.]

A. W. CODD et al., Respondents, v. NEW YORK UNDERWRITERS INSURANCE COMPANY et al., Appellants.[1]

[1]Reported in 144 P. (2d) 234.

*Roy A. Redfield,* for appellants.

*George M. Ferris* and *Wernette & Crowley,* for respondents.

MILLARD, J.—A. W. Codd, who was engaged in the lumber business, operated a saw mill in Spokane for a number of years prior to the time of the destruction of that mill by fire in September, 1939. New York Underwriters Insurance Company, a foreign corporation, is represented in Spokane by W. R. Cooley, its local agent. In November, 1938, two agents of the Westchester Insurance Company, one of whom was Lewis A. Wells, visited Mr. Codd at the saw mill of the latter for the purpose of writing fire insurance on the saw mill.

Codd told those two agents at that time that he contemplated placing about ten thousand dollars in fire insurance on his plant, and that he was making a financial deal with Dixon and Mackey, operators of the Western Pine Lumber

Company, which would require Codd to place a mortgage on the property; that he would then want not less than ten thousand dollars in fire insurance, and that, during the following summer when the fire hazard was great, he would carry about twenty or twenty-five thousand dollars in fire insurance on his plant. He also told Wells that, when he purchased the insurance, he would desire to pay the premium one-third at the time of the writing of the insurance, a third in thirty days, and the remainder in sixty days, which Wells stated would be satisfactory.

About two months later, Codd's negotiations with Dixon and Mackey, which consisted of a loan from them to Codd of eight thousand dollars, payment of which was secured by a note and mortgage on the saw mill, were completed. The contract provided for repayment of the loan by Mr. Codd's sawing logs belonging to the mortgagees, and, out of the price fixed per thousand for the sawing, seventy-five cents per thousand was to be retained by the mortgagees and credited on the loan. The mortgage on the saw mill obligated Codd to keep the buildings in good repair and unceasingly insured against loss or damage by fire in the amount of ten thousand dollars.

After the arrangements for the loan were concluded in the office of the mortgagees' attorney, Mr. Faler, auditor for the Western Pine Lumber Company, which was operated by mortgagees Mackey and Dixon, and Mr. Codd went to the office of Lewis A. Wells, the insurance agent mentioned above, for the purpose of taking out the ten thousand dollar policies of fire insurance, which Wells had informed Codd he could write in companies which he represented. Wells accepted the application of Codd for the fire insurance, but refused to abide by his agreement permitting the premium to be paid in three installments. Codd agreed then to pay all of the premium at one time and directed Faler to pay that premium out of the loan funds. Codd informed Wells at that time that, in view of the fact that Wells had breached the agreement respecting the

paying of the premium in three installments, Codd would purchase the remainder of his insurance through another agent.

Wells had one policy issued for five thousand dollars in the Westchester Fire Insurance Company, for which he was an agent, and another policy for five thousand dollars in New York Underwriters Insurance Company, which was issued by Mr. Cooley, local agent for that insurance company, at the request of Wells, and delivered to Wells, who, in turn, delivered both policies to the attorney for the mortgagees. Codd (the mortgagor) and Mackey and Dixon (the mortgagees) were all named as assured in the two policies. Codd never saw or heard from Wells or the insurance company which issued the policies in any way after the date the arrangements were made for issuance of the policies.

Cooley testified that he sent a statement with the policy issued by defendant insurance company when it was delivered to Wells, and that he expected Wells to collect the premium and remit it to him, Cooley. Wells never informed Codd that any of the insurance would have to be brokered, but stated that he could furnish the insurance himself. Pursuant to prior arrangements, a statement for the amount of the premium on the two policies was mailed to Mackey and Dixon, and a check for the full amount of the premium, taken from the loan, was mailed to Wells January 27, 1939.

The saw mill covered by the insurance policy was destroyed by fire September 3, 1939. This action was instituted by Mr. Codd and wife against the insurer and Lewis A. Wells to recover upon the policy in the amount of five thousand dollars. The defense to the action was that Cooley, New York Underwriters Insurance Company's agent, who had issued the policy, was notified by his principal (the insurance company) to cancel the policy, and Cooley undertook to cancel it by advising Wells that the company desired to cancel the policy and accepted Wells' statement that he would waive the statutory notice of can-

cellation and return the policy to Cooley. It was plaintiffs' position that the insurance company at no time gave to them the notice required by statute of cancellation of the policy or returned to plaintiffs the unearned premium on the policy. Trial of the cause to the court, sitting with a jury, resulted in verdict in favor of plaintiff for five thousand dollars, the face of the policy. From the judgment entered upon the verdict, motion for new trial having been overruled, the insurer appealed.

In addition to the evidence recited above, which the jury accepted as true, is the additional evidence that Wells went to the office of Mr. Faler, auditor for the mortgagees, and informed him that some other company was issuing a policy of fire insurance on respondents' mill, and thereupon Faler returned to Wells the policy upon which this action was brought and Wells delivered to Faler a policy in the Globe-Republic Company. The policy issued by appellant insurer was in Faler's possession approximately two weeks. Subsequently, Wells and Faler made several exchanges of other policies brought by Wells to Faler, until Faler had, in lieu of the policy issued by appellant insurer and delivered to and paid for by Codd, a policy in which Codd was not even named as one of the assured, but in addition had the following rider attached:

"It Is Understood and Warranted That no other insurance will be placed on this property in the name of Ray W. Mackey and Grant R. Dixon except $5000.00 Any other insurance whatsoever, either in the name of the assured or A. W. Codd, will void the policy to which this form is attached."

This rider was signed by Dixon, Mackey, and Faler. The last two policies that Wells traded with Faler were canceled by statutory method in June, 1939, for failure to pay the premium.

Codd testified, and manifestly the jury believed him else it would not have returned the verdict in his favor, that he never had any knowledge of the trading of policies between Wells and Faler until July 20, 1939, when, because

of hot weather and additional fire hazard he was arranging to place ten thousand dollars additional insurance on the saw mill through another insurance agent. This is the ten thousand dollars additional insurance Codd informed Wells he would purchase during the summertime when the fire hazard was increased. Codd made arrangements with Lloyd Hahn, the insurance agent, to write the policy and then went to the office of Western Pine Company to see whether that company would advance the premium, as was done before, and charge it to Codd's account.

When Codd told Faler, auditor for the company, of his intention to place an additional ten thousand dollars in fire insurance on the plant, which Lloyd Hahn had agreed to write, Codd was informed of the attempted cancellation of the five thousand dollar policy by Wells' taking up the policy and leaving another policy in lieu thereof in a different company and repeating the trading operation several times. The policies, none of which bore the name of respondent Codd as one of the assured, were exhibited to Codd. Faler informed Codd that he had put another ten thousand dollars in two other insurance companies, the premium for which was charged to Codd's account by Mackey and Dixon and paid by Codd. This additional ten thousand dollars in insurance is not involved in this action, as it was not obtained through Wells.

Codd advised Faler that he never purchased any such insurance policy, and, when he inquired whether the amount of the premium had been returned, Faler replied in the negative. Codd then instructed Faler to refuse to accept the return of any money until Codd had the policies which were issued originally and for which he had paid the premiums. Appellant insurance company never communicated with respondents in any way or gave them any notice of the attempted cancellation, and, as a result of the attempted cancellation without Codd's knowledge, respondents did not have any insurance on the saw mill July 20, 1939, when Codd discovered the facts recited above, and also was out the premium of $325.50 which had been paid

for him from the loan made to him by Mackey and Dixon. Within less than two months thereafter—September 3, 1939—the property was destroyed by fire. Proof of loss was furnished to the insurer, which rejected the claim, whereupon this action was instituted with the result stated above.

In the companion case of *Codd v. Westchester Fire Ins. Co.*, 14 Wn. (2d) 600, 128 P. (2d) 968, it was contended, as the insurer contends in the case at bar, that the insurer's motion for judgment in its favor, as a matter of law, should have been granted, on the ground that respondents were estopped by the silence which they maintained after they learned of the cancellation of the policy.

We held in the case cited that estoppel by silence does not arise without full knowledge of the facts and a duty to speak on the part of the person against whom it is claimed; that the duty to notify Codd, as one of the named insureds in the policy, was placed by statute (Rem. Rev. Stat., § 7154 [P. C. § 3016]) upon the insurer; that insured's silence— respondents had a period of at least a few days more than a month after they first learned of the cancellation of the policy until the mill burned within which to request the return and continuation of the canceled policy—did not mislead the insurer, and no duty rested upon Codd to advise the insurance company concerning the statutory method to be followed in canceling an insurance policy; and that, as the statutory method was not followed by the insurer in its attempt to cancel the policy, it could not be held, as a matter of law, that Codd by his silence was estopped from contending that the policy was not canceled. We held that the question of cancellation was properly one for the jury to be determined under the court's instructions.

The contention of counsel for appellant insurer that Wells was Codd's agent is without substantial merit. The jury was warranted in believing that Wells intended to write the ten thousand dollars insurance in companies for which he was agent, and no suggestion was ever made by Wells that there would have to be two policies of five

thousand dollars each instead of one policy for ten thousand dollars, which Codd desired to purchase. Codd never knew that Wells intended to broker five thousand dollars of the insurance through Cooley, local agent for appellant insurer. When Wells delivered the two policies of five thousand dollars each, one in appellant insurance company, to the mortgagees (Mackey and Dixon), Wells' agency, whether designated that of broker or aught else, ended. In support of this is the fact that Codd informed Wells at the time the arrangements were concluded for issuance of fire insurance in the amount of ten thousand dollars that, in view of Wells' repudiation of his former promise respecting the payment of the premium in three equal installments, he would not purchase more insurance through Wells the following summer, but that he, Codd, would purchase it through another agent. Wells was requested to write the insurance, but he was not authorized to keep the property insured, and he had no authority to substitute a policy and waive notice of cancellation without notice to Codd.

Codd never consented to a cancellation of the policy. He knew nothing about the attempted cancellation until July, 1939. The mortgagees, who delivered the policy to Wells at his request, were without authority to surrender those policies. A mortgagee has no authority as agent of the mortgagor to agree to a voluntary cancellation of an existing policy of insurance even though new policies are obtained. In *Bache v. Great Lakes Ins. Co.*, 151 Wash. 494, 276 Pac. 549, we held that a mortgagee, expressly authorized in the mortgage to hold possession of the policies and to procure insurance in case the mortgagors failed to perform their obligation to do so, was not the agent of the owner for the purpose of effecting a cancellation of an existing policy in procuring new insurance.

Clearly, Wells was the insurer's agent for collection of the fire insurance premium. It is admitted that Cooley was the insurer's local agent in Spokane. He testified that, when the policy was delivered to Wells, the in-

surance was already in force; that a bill for the premium accompanied the policy when it was delivered to Wells, whom appellant insurer expected would collect the premium. Faler, auditor for the mortgagees, paid the premium by check to Wells. If Wells never turned the premium over to the insurer, that is a matter between the insurer and Wells, as, manifestly, Wells was agent for the insurer for the collection of this premium. We note appellant insurer's recognition of this rule by its requested instruction that, in respect to collection of money for the premium, the broker may under some circumstances be regarded as the agent of the insurance company which issued the policy, but only for the purpose of getting the premium collected; that, if the policy be entrusted to the broker for delivery, he is the agent of the issuing insurance company to that extent; that is, for purpose of collection.

The court instructed the jury that, if it found that appellant insurance company executed the policy of insurance in question through its duly authorized agent, Mr. Cooley, who as the agent of appellant insurance company, delivered the policy to Wells for delivery by him to the mortgagees, in the delivery of that policy to the mortgagees Wells was acting as agent of appellant insurance company and the policy became effective upon its delivery by Wells to the mortgagees, and that policy could thereafter be canceled only in the manner set forth in other instructions. In effect, the jury was instructed that Wells was the agent of appellant insurer in delivery of the policy. Appellant insurer did not except to, nor assign as error, the giving of that instruction; hence, it is the law of this case. In its endeavor to cancel the policy, the insurer chose a method other than that provided by the statute (Rem. Rev. Stat., § 7154) for cancellation. Without the knowledge or consent of the insured, therefore, the instrumentality chosen by it was an agent of appellant insurer's choice.

The contention of counsel for appellant insurance company that Cooley, the local agent of the insurance company, had a right to act on the apparent authority of

Wells to waive the five days' notice of cancellation, is without substantial merit. Codd never saw, nor did he communicate with, Wells in any manner after he arranged for, the issuance of the policy in question until more than a year after the fire. It will be recalled that Codd informed Wells at the time of the issuance of the policy that he would never deal with him again, because of Wells' repudiation of his agreement in the matter of permitting Codd to pay the premium in three installments. There is no evidence of any act or conduct of Codd, the principal, which could have in any way influenced the action of Cooley in dealing with Wells and instructing or permitting Wells to take up the policy from the mortgagees without giving to Codd the notice required by the statute (Rem. Rev. Stat., § 7154).

The rule that, in the determination of the question whether an agent acts within the apparent scope of his authority, the acts of the principal alone and not the acts of the agent are to be considered, needs no citation of sustaining authority.

"The principal is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused by the agent." *Bowles Co. v. Clark,* 59 Wash. 336, 340, 109 Pac. 812, 31 L.R.A. (N.S.) 613.

Wells was never vested by Codd with any authority other than to have the policy issued; that is, Wells, in his relationship with Codd, was merely a special agent, and, when he had arranged with Cooley to issue the policy, his special agency was concluded. When the policy was delivered, the contract of insurance was complete, and thenceforth Wells was without any power, apparent authority, or agency, to do anything further unless he was employed or empowered by some one in authority to do so.

It is unnecessary to discuss assignments of error on refusal to give requested instructions. We have read all of the instructions given which we find clearly and correctly charged the jury under the pleadings and the evidence. The

refusal to give requested instructions is not prejudicial error when those instructions are given in substance in other instructions, in so far as the evidence of the case calls for instructions upon the matter requested. *Barrett v. Powers,* 158 Wash. 270, 290 Pac. 816.

The judgment is affirmed.

SIMPSON, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.

