The WESTERN CASUALTY & SURETY COMPANY, a corporation, Plaintiff,

v.

Billy Fred LUND, Halliburton Oil Well Cementing Company, and Donald Herbert Sprague, and The Standard Insurance Company, Defendants.

Civ. No. 6372.

United States District Court
W. D. Oklahoma.
June 29, 1955.

Looney, Watts, Ross, Looney & Nichols, Oklahoma City, Okl., for plaintiff.

Logan, Godlove & Cummins, Lawton, Okl., Pierce, Mock & Duncan, Oklahoma City, Okl., and Rucker, Tabor & Cox, Tulsa, Okl., for defendants.

WALLACE, District Judge.

The plaintiff, Western Casualty & Surety Company, a Kansas corporation (herein referred to as Western) instituted this declaratory judgment action [1] to determine whether it is under any legal liability to defend a state court dam-

1. See 28 U.S.C.A. §§ 2201, 2202.

age action filed by defendant Lund against defendants Sprague and Halliburton Oil Well Cementing Company (herein referred to as Halliburton) arising out of an automobile collision between Lund and Sprague while Sprague was employed by Halliburton. The Standard Insurance Company of Tulsa, Oklahoma,[2] (herein referred to as Standard) has also been brought in as a party defendant in order to learn whether Standard has any policy liability in connection with the instant accident.

The introduced evidence indicates that on January 17, 1954, defendant Sprague purchased a 1948 DeSoto in Duncan, Oklahoma, financing the purchase through the Duncan Finance Company. L. A. Edwards, the owner of Duncan Finance and an authorized policy writing agent of Standard, wrote a Standard policy insuring Sprague against physical damage to his car and against public liability and property damage within limits of $5,000–$10,000–$5,000. On about February 16, 1954, Sprague, who was then working for Halliburton, requested Edwards to increase the public liability limits to $50,000–$100,000; this, Edwards agreed to do, furnishing Sprague with a letter to be given to Sprague's employer, Halliburton, showing that higher limits had been obtained. Later the same day, Edwards, upon realizing Sprague was under 25 years of age, called R. K. Arnold, a policy writing agent of plaintiff Western and procured for Sprague public liability coverage of $50,000–$100,000. Edwards then wrote Sprague that Standard was immediately cancelling its policy for $50,000–$100,000, but mentioned that Arnold was writing "a liability policy for the same lim-

its".[3] This same day or the day thereafter, Sprague traded the DeSoto for a 1941 Ford; and, on about February 17th or the 18th Sprague left for New Mexico in the Ford on business for Halliburton. Several days thereafter when Western's agent Arnold, mailed Western's liability policy to Edwards, Edwards promptly returned the policy to Arnold stating that no payment of premium had been made, that the DeSoto had been repossessed and that there was no further need for the policy.[4] As a consequence, Arnold ran through a "flat" cancellation of the Western policy. While on the way to New Mexico, Sprague experienced mechanical trouble and traded the Ford for a 1949 Oldsmobile. Upon returning to Oklahoma and while driving the Oldsmobile, on March 8, 1954, Sprague was involved in the collision with defendant Lund.

The Court has concluded that at the time of the instant collision on March 8, 1954, the Western policy was in effect; and, the Standard policy was not in effect, but previous to such time had been validly cancelled.

On about February 16th, Sprague, in compliance with his employer's requirement, sought increased public liability protection. Edwards, an authorized agent of Standard, increased the public liability provision of Standard's policy to $50,000–$100,000. This same day Edwards wrote Sprague that Standard was cancelling its public liability policy but indicated that other public liability insurance had been obtained for Sprague from Arnold. Although Edwards could not *immediately* cancel the Standard policy as was attempted in the

2. All joined defendants are citizens of Oklahoma.

3. This letter provided: "Dear Mr. Sprague: (Re: Pol. A–62508) Effective this date, we are cancelling your coverage for $5,000.00 and $100,000.00 limits on the above policy. Mr. R. K. Arnold is writing you a liability policy for the above limits ($50,000.00 and $100,000.00 limits—bodily injury liability and $5,000.00 property damage liability).

The reason for this action is that our Company does not desire to insure persons under 25 years of age for such higher limits."

4. Sprague's deposition on file indicates that strictly speaking no repossession had occurred. Apparently, through mutual agreement the parties worked out a deal for returning the DeSoto and selling Sprague the Ford.

letter,[5] the notification did serve to cancel said policy provision 10 days after the giving of such notice.[6]

■■ Beyond question, Edwards was Sprague's agent to *acquire* the public liability policy from Western. However, this agency did not vest Edwards with authority to *cancel* such policy without Sprague's knowledge or consent.[7] Edwards, who no longer held a mortgage on Sprague's car and who apparently had no further financial interest in Sprague's affairs, told Western the policy was no longer needed. At such point it was incumbent upon Western to give the requisite written notice of cancellation or to check with the insured, or one clearly authorized to approve immediate cancellation, before cancelling flat. It is obvious Sprague had not given Edwards authority to cancel the Western policy, but contrarily, had already left for New Mexico with full assurance from Edwards'

letter that although Standard was cancelling, Arnold had written a policy in its place.

■ It is immaterial that Sprague, at the time of the collision, had not given Western notice of the change of automobiles inasmuch as under the express wording of the "newly acquired automobile" provision of the policy he had 30 days so to do; and, the accident in question occurred well within the 30-day period.[8]

■■ It is likewise immaterial that Sprague failed to give Western immediate notice of the accident. Although Sprague by merely going to Edwards and telling him of the accident cannot be deemed to have given Western notice "as soon as practicable" as required in the policy inasmuch as Edwards was not an agent of Western, nonetheless, when Western was promptly notified of the filing of the state court action commenc-

5. The cancellation paragraph of the policy provided in part: " * * * This policy may be cancelled by the Company by mailing to the named assured at the address shown in this policy written notice stating when *not less than ten days thereafter such cancellation shall be effective.* The mailing of notice aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy. * * * " (Emphasis supplied.)

6. See Seaboard Mut. Casualty Co. v. Profit, 4 Cir., 1940, 108 F.2d 597, 126 A.L.R. 1105. As remarked by the annotator in 35 A.L.R. p. 899, 900: " * * * Quite a number of cases have arisen upon the questions as to when notice given pursuant to the provision begins to run, and as to the effectiveness, after the lapse of the full time, of a notice of immediate cancelation, or cancelation in a time in fact or in law shorter than that stipulated in the policy. While there are cases actually or apparently opposed, the better view is that any notice otherwise sufficient in form,—i. e., as to writing, etc.,—which clearly conveys to the assured notice of cancelation, is effective after lapse of the full time stipulated in the policy, whether it be a notice of immediate cancelation of a policy contemplating cancelation only after notice, or whether the notice given, while not a

notice of immediate cancelation, is shorter than that stipulated in the policy. The view is reasonable, for the only purpose of the notice to be given by the company upon cancelation is to enable the assured to obtain insurance elsewhere before he is subjected to risk without protection, and it finds the support of both the majority and better considered of the cases."

7. Spann v. Commercial Standard Ins. Co. of Dallas, Tex., 8 Cir., 1936, 82 F.2d 593; Hooker v. American Indemnity Co., 1936, 12 Cal.App.2d 116, 54 P.2d 1128. Cf. Codd v. New York Underwriters Ins. Co., 1943, 19 Wash.2d 671, 144 P.2d 234, and, Naify v. Pacific Indemnity Co., 1938, 11 Cal.2d 5, 76 P.2d 663, 115 A.L.R. 476.

8. The coverage for such period is automatic and is not contingent upon a giving notice within the 30-day period that a car has been newly acquired, although the policy does become ineffective at the close of such time if the insurer has not been notified of the change. Read Birch v. Harbor Ins. Co., 1954, 126 Cal. App.2d 714, 272 P.2d 784, and cases cited therein. Cf. Merchants Mut. Casualty Co. v. Lambert, 1940, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483. Contra, Jamison v. Phoenix Indemnity Co., D.C. N.J.1941, 40 F.Supp. 87.

ed by Lund against Sprague, and, thereupon, Western denied that its policy was in effect and filed this declaratory judgment action, Western waived any right to complain of the insured's failure to give prompt notice that an accident had occurred.[9]

Within 15 days counsel should submit a journal entry which conforms with this opinion.

---

9. As mentioned in 18 A.L.R.2d 491: "It is well settled by the later cases * * * that the insurer is precluded from defending successfully against an action brought under a liability policy on the ground of a violation by the insured of the provisions as to notice and the forwarding of suit papers where it had denied liability on some other ground. [footnote] The rationale of this rule is that when a party to a contract refuses to perform and bases its refusal on one ground it will be held to have waived all other grounds and to be estopped when suit is brought from setting up other grounds for its refusal." See in particular Conrad v. Duffin, 1945, 158 Pa.Super. 305, 44 A.2d 770; Coulter v. American Employers' Ins. Co., 1948, 333 Ill.App. 119, 78 N.E.2d 131; and, American Employers' Ins. Co. v. Brock, Tex.Civ.App.1948, 215 S.W.2d 370. Cf. Utilities Ins. Co. v. Smith, 10 Cir., 1942, 129 F.2d 798, 802.