[No. 13603-5-III.    Division Three.    April 18, 1995.]

ROBERTA ISAACSON, *Appellant*, v. DEMARTIN AGENCY, INC., ET AL, *Respondents*.

*Michael A. Maurer* and *Lukins & Annis,* for appellant.

*Thomas C. Stratton* and *Eklund Rockey Stratton, P.S.; James B. Drewelow* and *Carlson, Drewelow & Arch,* for respondents.

THOMPSON, C.J. — Roberta Isaacson appeals the summary judgment dismissal of her claims against American States Insurance Company and American Economy Insurance Company (American Economy) and DeMartin Agency, Inc. Ms. Isaacson suffered a fire loss at her business shortly after her insurance policy was canceled for nonpayment of premium. She contends there are genuine issues of fact precluding summary judgment. We affirm.

### FACTS

In March 1988, Ms. Isaacson contacted Brian Hughes of the DeMartin Agency about insuring a beauty salon business she and her partner were about to open. The business

was to be located in leased space at 105 N. Emerson, Suite 205, in Chelan. After Mr. Hughes spoke with Ms. Isaacson, he completed an insurance application. He inserted Ms. Isaacson's business address in that section of the application asking for the "Named Insured and Address". In the box asking for "Location of Risk (if other than above)", he inserted "(PO Box 15049)".

In April 1988, Mr. Hughes delivered a letter and a policy issued by American Economy to Ms. Isaacson. The letter stated the annual premium was $100 and an invoice was enclosed. Ms. Isaacson paid the premium to DeMartin Agency in June 1988.

In March 1989, Ms. Isaacson contacted Mr. Hughes and informed him her business needed increased coverage. Mr. Hughes subsequently delivered an amended declaration of insurance. The declaration reflected a $777 annual policy premium with a $199.25 payment due by April 21, 1989.

In deposition, Ms. Isaacson said she asked Mr. Hughes for quarterly billings and understood American Economy would be billing her. However, in her declaration she stated she "didn't know what it meant to be direct billed by the insurance company"[1] and Mr. Hughes never told her she had to pay the premium by any set date or lose the policy. Ms. Isaacson wrote a $98 check on April 13 but did not mail or deliver it to Mr. Hughes or American Economy.

On May 3, 1989, American Economy mailed a notice of cancellation of insurance to Ms. Isaacson at her business address. Cancellation was to be effective May 17 if the premium remained unpaid. Ms. Isaacson stated in deposition that she did not receive any notice of cancellation.

Sometime in early May, or perhaps as late as May 17, Mr. Hughes called Ms. Isaacson regarding her insurance. Ms. Isaacson stated in deposition that he did not tell her the policy would lapse if she did not pay the premium. She said Mr. Hughes asked if she wanted the insurance and she told

---

[1]To the extent Ms. Isaacson's declaration contradicts her prior deposition testimony, a genuine issue of fact on the issue does not arise. *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989).

him she did. She said she was trying to settle a dispute with her partner and get her partner's name off the policy and that she had written a check. Mr. Hughes' records contained a notation that he called Ms. Isaacson and advised her he would let the policy lapse.

Ms. Isaacson had not made any premium payment when, on May 22, 1989, her beauty salon caught fire. Mr. Hughes told Ms. Isaacson her insurance had been canceled for nonpayment. When he refused to accept Ms. Isaacson's April 13 check and American Economy would not pay her fire losses, she commenced this action for breach of contract against American Economy and breach of contract, breach of fiduciary duty, and negligence against DeMartin Agency. The Defendants' motions for summary judgment dismissing all claims were granted.

### CLAIMS AGAINST INSURER

We determine first whether the trial court erred in granting summary judgment in favor of American Economy.

Cancellation of Policy. Ms. Isaacson contends American Economy is not entitled to the presumption of cancellation set forth in RCW 48.18.290[2] because it sent the cancellation

---

[2]RCW 48.18.290 states:

"(1) Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy which does not contain a clearly stated expiration date, may be effected as to any interest only upon compliance with the following:

"(a) Written notice of such cancellation, accompanied by the actual reason therefor, must be actually delivered or mailed to the named insured not less than forty-five days prior to the effective date of the cancellation except for cancellation of insurance policies for nonpayment of premiums, which notice shall be not less than ten days prior to such date and except for cancellation of fire insurance policies under chapter 48.53 RCW, which notice shall not be less than five days prior to such date;

". . . .

"(2) The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his or her last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States post office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the post office upon failure to find, or deliver the mailing to, the addressee.

"(3) The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed."

notice to her premises address, not her post office box. She cites *Codd v. New York Underwriters Ins. Co.*, 19 Wn.2d 671, 144 P.2d 234 (1943).

The relevant portions of RCW 48.18.290(1) require that before an insurance policy can be canceled for nonpayment of premium, written notice of cancellation must be actually delivered or mailed as specified in the statute not less than 10 days prior to the date of cancellation. Mailing must be effected by depositing in the United States mail an envelope directed to the addressee at his or her last address as known to the insurer or as shown by the insurer's records. RCW 48.18.290(2). The affidavit of the person making or supervising the mailing is prima facie evidence of the fact of mailing. RCW 48.18.290(3).

An affidavit submitted by American Economy states that an envelope containing a notice of cancellation effective May 17, 1989, was deposited in the United States mail on May 3, 1989. The envelope was addressed to Ms. Isaacson at "105 North Emerson, Suite 205, Chelan, Wa. 98816". The affiant also states the envelope was not returned to American Economy showing that the United States Postal Service was unable to deliver it.

█ There is no evidence in the record that the address used by American Economy was not the correct address for Ms. Isaacson's business premises or that the United States Postal Service would not or could not deliver mail to that address. Without such evidence, there was no genuine issue of fact for trial. Although Ms. Isaacson stated she did not receive a cancellation notice, an insurer is not required to prove actual receipt if statutory mailing procedures are followed. RCW 48.18.290(1); *Wisniewski v. State Farm Gen. Ins. Co.*, 25 Wn. App. 766, 609 P.2d 456 (1980). *Codd* is distinguishable because the insurer in that case failed to comply with the statute, a fact not present here.[3]

---

[3]We do not reach Ms. Isaacson's contention that her insurance policy required American Economy to mail or deliver notice to the insured's last mailing address because the policy is not part of the record on appeal, nor was the argument made before the trial court.

Estoppel. Ms. Isaacson also contends there are issues of fact as to whether American Economy is estopped from denying coverage because her late payment had been accepted before. She relies primarily on *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989).

In limited circumstances, an insurer may be equitably estopped by its conduct from denying coverage to its insured if the insured justifiably relies on such conduct. To prove equitable estoppel, the insured must show (1) conduct inconsistent with the claim afterward asserted; (2) action by the insured on the faith of such conduct; and (3) injury to the insured resulting from allowing the insurer to contradict or repudiate such conduct. *Saunders*, at 340. *See also Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. 1*, 124 Wn.2d 816, 881 P.2d 986 (1994).

■ The record establishes that Mr. Hughes accepted Ms. Isaacson's first premium 2 to 3 months after its due date. However, because Ms. Isaacson was a new customer who paid a single annual premium, it was the only instance of accepting a late premium payment. As stated in *Saunders*, at 342, one instance of late payment will not, by itself, establish a course of conduct that will support equitable estoppel.

In her reply brief, Ms. Isaacson contends the acceptance of her first late payment coupled with American Economy's failure to bill her and notify her the policy would be canceled for nonpayment collectively establishes a course of conduct and creates a factual issue as to justifiable reliance. However, Ms. Isaacson admitted receipt of a declaration face sheet delivered to her by Mr. Hughes. That face sheet gave the date when payment was due. Ms. Isaacson also admitted writing a $98 premium check in April 1989, although she made no attempt to deliver it before the fire loss. Such evidence is insufficient to create an issue of fact as to her justifiable reliance.

### CLAIMS AGAINST INSURANCE AGENCY

We address next Ms. Isaacson's contention the trial court erred in granting summary judgment dismissing Ms. Isaacson's breach of contract, breach of fiduciary duty, and negligence claims against DeMartin Agency.

Breach of Contract. Ms. Isaacson contends a local insurance agent may be personally liable to an applicant for a breach of his contract to procure insurance. 16A John A. Appleman & Jean Appleman, *Insurance* § 8831 (1981). She contends the agent may be liable for damages even when he is not to blame for the failure to obtain coverage if he fails to inform the customer that the requested insurance has not been procured.

There is no evidence here that Mr. Hughes failed to procure the insurance Ms. Isaacson requested. To the contrary, the evidence establishes that the insurance was obtained and was in effect until canceled for nonpayment of premium on May 17. Without evidence of a breach of any contract, the trial court properly dismissed Ms. Isaacson's contract claims against DeMartin Agency.

■ Negligence/Breach of Fiduciary Duty. Ms. Isaacson contends DeMartin Agency had a duty to inform her that her insurance policy was being canceled, notwithstanding the insurer's obligations under RCW 48.18.290(1). We disagree. A determination of whether a legal duty exists is initially a question of law for the court. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982).

■ A number of courts have held that an insurance agent has no duty to inform an insured of a notice of cancellation if the insured knew or should have known of the cancellation. Thus, where the insurer is required to give direct notice of cancellation by contract or statute, the insurance agent is not liable for a failure to notify. *See, e.g., Honeycutt v. Kendall*, 549 F. Supp. 802, 805 (D. Del. 1982); *Golting v. Hartford Accident & Indem. Co.*, 43 Colo. App. 337, 339, 603 P.2d 972 (1979); *Adkins & Ainley, Inc. v. Busada*, 270 A.2d 135, 137 (D.C. 1970); *Rocque v. Co-operative Fire Ins. Ass'n*, 140 Vt. 321, 326, 438 A.2d 383, 386 (1981). The theory behind this rule is that the agent is justified in assuming the insured will be made aware of the cancellation by the insurer. *Adkins*, at 137; *Rocque*, at 325-26. *Security Ins. Agency, Inc. v. Cox*, 299 So. 2d 192 (Miss. 1974), cited by Ms. Isaacson, is distinguishable from these facts because the insurer was not obligated to give notice of cancellation to the insureds and

the agent had a longstanding practice of notifying its insureds about policy cancellations.

Under the circumstances presented in this case, DeMartin Agency did not have a duty to inform Ms. Isaacson that her policy would be canceled if she did not pay the premium. Mr. Hughes' acceptance of a single late payment did not create such a duty, nor was there evidence of any course of conduct which would give rise to such a duty. *Saunders*. Ms. Isaacson knew the premium was past due. Finally, the insurer was obligated to send notice of cancellation pursuant to RCW 48.18.290. Although an agent owes a customer a duty to exercise reasonable skill, care and diligence in effecting insurance, *Roberts v. Sunnen*, 38 Wn.2d 370, 229 P.2d 542, 29 A.L.R.2d 165 (1951), Ms. Isaacson did not create an issue of fact as to any breach of that duty.

A motion for summary judgment should be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982).

We affirm.

MUNSON and SCHULTHEIS, JJ., concur.