[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff has brought a declaratory judgment action against the defendant insurance company in an effort to establish that he had coverage in effect with the defendant on September 2, 1994. On that date, he was involved in a motor vehicle accident with another person who claims to have suffered injury in the accident.
The plaintiff initially obtained a "liability only" policy of motorcycle insurance coverage from the defendant in 1992 for one year; he renewed that policy in March of 1993 and then on March 26, 1994. On May 16, 1994, the plaintiff paid the premium due on CT Page 9031 the liability only policy which had an inception date of March 26, 1994. In May, the plaintiff made an application through an agent of the defendant to add property damage coverage for his motorcycle. The agent submitted to the defendant a request for policy change and the defendant did issue an amended declaration page which the plaintiff received along with a bill requesting payment of an additional premium of $184. The due date for payment of this additional premium was August 7, 1994. The company did not receive the payment by August 7th.
The defendant has now moved for summary judgment claiming various facts establish no policy was in effect on the date of the plaintiff's September 2, 1994 accident because no policy between it and the plaintiff was in effect. The plaintiff sent what it claims to be a notice of cancellation on August 15, 1994 advising the defendant if he did not make the $184 payment his policy would be canceled. A certificate of mailing confirms that notice of cancellation was sent to the Connecticut plaintiff from the offices in Cleveland, Ohio, on the just-mentioned date. The cancellation notice provided that cancellation would be effective as of August 27, 1994. The plaintiff sent in a payment to the defendant postmarked August 31, 1994, which was after the effective date of the cancellation. The defendant considered the policy canceled and the payment sent by the plaintiff was refunded on September 2, 1994, the same date of the accident. The foregoing facts do not appear to be in dispute. The plaintiff denies receiving the document which was characterized as the cancellation notice but no facts have been put into issue to suggest it was not sent — a different consideration from the issue of receipt.
The standards to be used in a summary judgment motion are well known. It is an appropriate remedy to dispose of cases where there is no genuine issue of material fact but if there is such an issue it is not for the court to decide. The court will address various issues raised by the parties.
(a)
First, the court does not accept the plaintiff's argument that the notice of cancellation here was ambiguous. If it was ambiguous, then it could be held to be of no effect. DeProsperov. Nationwide Mutual Fire Ins. Co., 30 Conn. Sup. 291, 297
(1973). CT Page 9032
But the plaintiff's arguments are not persuasive on this issue. The liability only policy which he had paid for ran from March 26, 1994 to March 26, 1995. He requested additional coverage for property damage in May of 1994. This application was approved and an amended declaration was issued. The amended declaration referred to a current policy number of MC0-0-5-82-312-2 and a previous policy number of 0-582312. It also provided that the amended declaration page superseded the prior declaration page effective 3/26/94. The policy period on the amended declaration was stated to be from June 3, 1994 to March 26, 1994. The notice of cancellation referred to policy number MC 00582312-2 and referred to its inception date as March 26, 1994.
Although it has long been the rule that in matters such as these, ambiguities must be interpreted in favor of the insured and against the insurer, it really strains credulity to accept the proposition that any reasonable person who read the intitial policy, the amended declaration, and the notice of cancellation. would not realize that his liability coverage was being canceled.
The amended declaration refers to an inception date of June 3, 1994 but any reasonable person would have understood that date took account of the fact that the added property damage coverage would run from then to the March 26, 1995 date which was the termination date for liability coverage. Any doubts that liability coverage was threatened by the notice of cancellation would certainly be removed by the large type language in the bottom half of the document that said:
 "This cancellation will be reported to the commissioner of motor vehicles. You will receive a written inquiry from the commissioner concerning whether or not the required minimum insurance is being maintained. If your insurance coverage cancels and has not been replaced, the commissioner will cancel the registration(s) for the vehicle(s) coverage under that policy. . . ."
It is true that in the notice of cancellation the "inception date" of the policy is referred to as March 26, 1994 and the notice did not reference a policy with an inception date of June 3, 1994. But the amended policy was never intended to affect liability coverage which in fact commenced on the March date. What could the plaintiff have been confused about — whether the CT Page 9033 property damage coverage commenced or once commenced was being cancelled? But he never paid the premium for that added coverage in any event so the notice of cancellation must be fairly interpreted as alerting him to the fact that his liability coverage was being cancelled.
(b)
The notice of cancellation should have been recognized as such by the plaintiff and it otherwise met the requirements of § 38a-343 (a) by stating the reason for cancellation — here, nonpayment of premium.
The next issue is whether the statutory requirements of giving the notice of cancellation were met. The relevant portion of § 38a-343 reads as follows:
 "(a) No notice of cancellation of policy to which section 38a-342 applies may be effective unless sent, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivered by the insurer to the named insured at least forty-five days before the effective date of cancellation, provided where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given."
Here, the certificate of mailing is dated August 15, 1994 and the cancellation date is August 27, 1994. If the determinative date is the date on which the notice was sent, the ten day provision of the statute has been complied with. If, under our statute, receipt by the insured determines whether the ten day notice requirement has been met, then this case cannot be resolved by way of summary judgment. The plaintiff denies having received the notice. If a letter or other document is mailed to the correct address with correct postage, it is presumed that it was received. But the presumption is one of fact and may be rebutted, Pitts v. Hartford, Life Annuity Ins. Co.,66 Conn. 376, 384 (1845); the denial of receipt in the plaintiff's affidavit makes the question an issue of fact. Even if the presumption is defeated by the denial, the trier may still find receipt within the necessary time frame, O'Dea v. Amodeo,118 Conn. 58, 61-62 (1934), but that, of course, cannot be resolved CT Page 9034 by way of summary judgment.
In a very well reasoned opinion, Judge Hodgson reviewed the case law and legislative history of § 38-175 (h)(a), the predecessor statute to § 38a-343 (a), and concluded that notice of cancellation of a mandatory automobile insurance policy must be actually received by the policy holder. Hernandez, et al.v. Hartford Accident Indemnity Co., et al., 1 CONN. L. RPTR. 317 (1990). There too a declaratory judgment action was brought by the insured and he denied receiving the cancellation notice the insurer claimed it sent to him. The court noted the article in 40 ALR 4th 867 and the fact that other states are divided as to whether proof of actual receipt of notice's required or whether notice is effective upon mailing. It referencesMerchant's Mutual Casualty Co. v. Justices of Superior Court,197 N.E. 166 (Mass., 1935), which held that when the policy subject to cancellation is one for compulsory insurance, proof of actual receipt of notice is required. The statute required written notice of cancellation be "given" to the insured and the court held, when compulsory insurance is involved, the natural meaning of a word like "given" should be given full effect.
The Hernandez case also points out that, while the statutory language "is such that notice of cancellation for reason other than nonpayment of premium is effective if sent at least forty-five days before cancellation, the shift in wording of the statute to `given' in the clause relating to notice of cancellation for nonpayment of premiums must be afforded some meaning." Id., p. 319. As further noted in Hernandez, the legislature could have easily provided that, in the case of nonpayment of premium, cancellation would be effective where sent within ten days if it meant notice was to be effective on mailing. Id., 319. As the court further reasoned, the insurer cannot rely on the specter of blanket denials of receipt of cancellation. A certificate of mailing in fact raises the danger that the insured may not receive the notice, but all an insurer need do to protect itself is use registered or certified mail.
Finally, the Hernandez court cites the case of Piscitello v.Boscarella, 113 Conn. 128 (1931), for the proposition that our court "has strictly construed cancellation procedures in statutes concerning other types of insurance." There, the statute required notices of cancellation of workers' compensation insurance to be filed with the board of compensation and thePiscitello court, at page 131, said: "Nor would the mere mailing CT Page 9035 of notice of cancellation to the commissioner be effective to terminate the obligations of the insurer; only its receipt by them could avail."
The article in 40 ALR 4th 867 cites cases dealing with the problem of adequate notice of cancellation in the context of interpreting the language of insurance policies. But the reasoning of those cases would apply to the interpretation of statutes which, in effect, define at least the minimum requirements of effective cancellation for insurance policy purposes. It should be noted that the ALR article does refer to cases that say that, where policy provisions permit cancellation by giving notice of a specified number of days, actual receipt of the notice is necessary to effect cancellation but only "in the absence of either a specific provision that mailing shall be sufficient proof of notice, or a provision specifying the manner in which notice should be given." Id. § 5 at page 883. Some of the cases do repeat this rubric. See, for example, AetnaInsurance Co. v. Settembrino, 324 So.2d 113, 114 (Fla., 1976);Rocque v. Co-Op Fire Insurance Ass'n. of Vermont, 438 A.2d 383,385 (Vt., 1981); Isaacson v. DeMartin Agency, Inc.,893 P.2d 1123, 1125 (Wash., 1995).
In our statute, there is no specific provision that mailing shall be proof of notice but the statute does set out four methods of notice: certified mail, registered mail, certificate of mailing, or direct delivery to the insured. The problem is that our statute is at cross purposes as to methods of notice — two of them would guarantee that there would be a method of ensuring the notice arrived in the ten day time period, two would not. Why even allude to registered or certified mail if mere mailing or delivery to the insurer sufficient to satisfy the statutory requirement? In other words, the dichotomy of delivery methods in our statute seem to reflect the dichotomy of language in the statute itself which says that where cancellation is for a reason other than nonpayment of premium, notice may be sent, but where it is for nonpayment notice must be given to the insurer.
Thus, in Edens v. South Carolina Farm Bureau Mutual Ins. Co.,308 S.E.2d 6780, 671 (S.C., 1983), the court said in language instructive on the problem presented here:
 "No authority has been cited which holds that the terms `mailing written notice' and `giving written notice' are necessarily CT Page 9036 synonymous or substantially similar. The term `giving written notice' means that the insured shall personally receive the notice in such manner that the insured becomes aware of having received it. `The provision involves a physical delivery to the insured of a document of which he becomes personally aware. This cannot be accomplished by depositing a document in the mail which he (sic) may or may not receive'. . ."
Cf Rocque v. Co-op Fire Ins. Assn. of Vermont supra at 438 A.2d, page 386: "`Giving Notice' is not the same requirement as `mailing notice' and demands more. Even where facts show that a cancellation notice was mailed to the insured, if the policy demands that notice be `given' and the notice was never received, the notice is ineffective as a valid cancellation." This analysis would apply to our statutory language and the same dichtonomy exists between using the words sent and given as between mailing and given — the word sent in our statute obviously refers to the various types of authorized mailings to the insured.
In Merrill v. Farmers Alliance Ins. Co., 122 P.2d 776, (Kan. 1942) the policy said:
 "This company reserves the right to cancel this policy, or any part thereof, by giving five days notice to that effect to the insured . . . such notice of cancellation . . . to be made in person or by mail addressed to the insured's post office address."
The court in holding actual receipt of the notice of the cancellation is required said at page 783:
 "The clause in the policy authorizes the insurer to cancel the policy by giving notice `to the insured'. It is true the provision authorized the notice of cancellation to be made `in person or by mail'; but this does not say that if the notice is mailed it becomes effective even though it is never received by the insured." CT Page 9037
A contrary result is not suggested if a close examination is given to some of the cases cited for the previously mentioned proposition in § 5 of the ALR article. There it is said that where a time period for notice is established by statute or the policy mailing is sufficient if the statute or policy specifies the manner in which notice should be given do not require such a result given our statutory language. Isaacson v. DeMartin AgencyInc., is cited in support of this position but as indicated at 893 P.2d p 1125, the statute the court interpreted did not set up two modes of delivering notice — it said notice shall be mailed or delivered where cancellation was for nonpayment of premiums; it did not, like our statute, say notice shall be sent for one type of cancellation but given to the insurer for another, cfTalley v. First of Georgia Underwriters, 596 So.2d 408, 409, 410
(La. 1992). The defendant responds by arguing that regardless of whether effective cancellation can be established by mailing apart from the question of receipt "the plaintiff has acknowledged that he did receive actual notice of the cancellation. In fact in response to that notice the plaintiff did send out the requested premium payment, albeit untimely," page 8 of April 8, 1997 Reply brief. The plaintiff never made such an acknowledgment — mailing of the premium from the plaintiff's perspective was apparently in response to what he said was a billing statement. In any event what defines "untimely" depends on whether mailing is the point from which the ten day notice requirement is measured or whether receipt is the determining date — if the latter is the case, granting of this motion would not be warranted. In any event, for the foregoing reasons, the court will rot grant this motion based on the August 15, 1994 mailing of the cancellation notice which, purportedly canceled this policy on August 27th.[1]
(c)
There is another reason, in the court's view, why this motion for summary judgment should not be granted. In this case, there is no question that the plaintiff had secured a liability policy on his motorcycle for the period of March 26, 1994 to March 25, 1995. The premium on that policy was fully paid. In May 1994, the plaintiff made an application to add property damage coverage for the same motorcycle. The increased premium for this coverage was $184. It was the failure of the plaintiff to pay this premium, after being billed, which prompted the defendant insurance company to send out its notice of cancellation. The notice of cancellation purported to cancel the entire policy including CT Page 9038 liability coverage. Assuming the court was incorrect in the conclusion reached in the previous section and cancellation should be held to be effective, the question remains: was it appropriate for the defendant to cancel the entire policy or could it only have canceled the requested additional coverage?
The plaintiff quotes language from Couch on Insurance 2d § 67.73 page 526.
 "An original automobile liability policy for which the premium is fully paid is a divisible contract and not subject to cancellation for insured's failure to pay an additional premium for additional and more comprehensive coverage under and after issuance of the original policy."
Couch cites Rosenthal v. Travelers Insurance Co., 308 N.Y.S.2d 812, aff'd 320 N.Y.S.2d 747 (1971), but that is not helpful since the case doesn't describe what the additional and comprehensive coverage was.
The plaintiff cites several other cases Studzinski v.Travelers Insurance Co., 434 A.2d 1160 (1981) and NationwideMutual Insurance Co v. Mason, 322 N.Y.S.2d 164 (1971). Both of these cases concerned situations where the insured had sought coverage for an additional motor vehicle. The courts held that when the premium was not paid for the additional coverage the insurer could only cancel coverage for that coverage since the contract of insurance was divisible. Ellis v. Firemens Insurance Co,420 S.E.2d 504 (1992) is similar in that the court found that a policy insuring both house and car was divisible and the payment of the homeowners premium created a complete insurance contract. Thus, the insurer's cancellation for nonpayment of premiums was effective, if at all, only to cancel the automobile portion of the policy, which alone had not been paid, id. 506.
The defendant counters this argument by saying that the foregoing cases are distinguishable because the policies in these cases could have been separately purchased as they either involved adding a separate second vehicle or combining a homeowner's policy with a separate liability policy. Here, an affidavit submitted by a casualty specialist working for the defendant, asserts the plaintiff could not have purchased property coverage for his motorcycle separate from his liability CT Page 9039 coverage — they had to be purchased together. Thus, the argument goes, the insurance contract here is not divisible and since that is so, the policy could be canceled in its entirety. This is not much help, however, since although the plaintiff may not have been able to buy property coverage without a liability policy, he certainly could have and in fact did purchase a liability policy without initially purchasing property coverage. It is also true that although insurance contracts are held to be divisible where different pieces or categories of property are being insured, this is only one type of situation — and an obvious one — where the risks can be said to be divisible.
In this area, the issue of divisibility should be approached keeping general contract principles in mind but also applying those principles in light of the fact that insurance risks and what are fair allocations of risk are being discussed. Insurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation. Cohn v. Pacific Employers Ins. Co.,213 Conn. 540 (1990, Linemaster Switch Corp. V. Aetna Life Casualty Corp.et al, 15 CONN. L. RPTR. 223 (1995); to hold otherwise would subvert fair risk allocation and the ability to companies to finance their risk through premiums based on such allocation. On the other hand, where an insurer has received a premium for certain coverage of a particular risk, it should not be allowed to withdraw that coverage because of consideration raising claims of not being paid to assume a different risk which has nothing to do with the original risk it assumed and for the assumption of which it got paid. To allow that would permit insurers in the liability coverage business to bow out from their responsibilities after a liability producing accident has occurred for reasons having nothing to with fair risk allocation.
These principles must be kept in mind when deciding the issue of divisibility of insurance policies because otherwise the law on divisibility of contracts is somewhat indecipherable. For example, Williston says:
 "A contract is divisible whereby its terms (1) performance of each party is divided into two or more parts and (2) the number of parts due from each party is the same, and (3) the performance of each part by one party is the agreed exchange for a corresponding part by the other party." 6 Williston, Contracts (3d CT Page 9040 ed), § 860 at pp 253-254.
The article in 43 Am.Jur.2d, "Insurance" is somewhat more understandable in terms of the court's previous discussion. At § 312, page 386, it says:
 "Primarily it may be said that whether a contract is entire or severable is a question of intention to be determined from the language employed by the parties in the light of all the circumstances surrounding them at the time they contracted."
At page 387 in discussing homeowners policies the article goes on to say:
 "The risks insured under a homeowner's policy covering personal liability, property damage, medical payments, etc. are severable and distinct and the contract is divisible under the general rule of law that a policy of insurance purporting to be entire may be divisible and severable where it covers several different kinds of risks or property at different locations."
Thus in Adams v. Northern Insurance Company of New York,493 P.2d 504, 506 (Ariz. 1972) the court sustained the trial court's denial of the plaintiff insured's partial summary judgment and granting of the insurer's motion where plaintiff sought damages for an alleged breach of a homeowner's policy. Fire damage was caused to the plaintiff's home. The trial court agreed that the plaintiff insured was barred from pursuing her action because of a one year limitation contained in what the court determined was a "property" insurance policy. The insured argued the policy was a "homeowner's" policy and under Arizona law the one year time limit was illegal. The court looked at the entire policy and determined it was divisible — there was a part concerned with property loss and another section concerned itself with coverage for personal liability, bodily injury, property damage, personal medical payments, and physical damage to the property of others. The court held: "It is apparent that the risks insured by the policy are severable and distinct. We hold that the policy is a property policy within the meaning of A.R.S. § 20-115, subsection A paragraph 3 and therefore suit must be commenced CT Page 9041 within the period therein prescribed."
The court cited a comment in Appleman, Insurance Law andPractice § 2372 (1969) where it is said:
 "A policy purporting to be entire may be divisible and severable where it covers several different kinds of risks . . ."
Also see Consumer's Money Order Corp of America Inc. v. NewHampshire Ins. Co., 386 SWBD 674, 677 (MO., 1964) where the court says: "If the character of the risks assumed is such that what affects the risk on one item does not affect the risk on the others the parties must have intended that the policy should be regarded as severable".
All of this language is in accord with a case in fact cited by the defendant First Savings Loan Association of Jersey Cityv. American Home Assurance Company 327 NYs2d 609 (1971). There the court relied on Williston and held that a fire policy, which originally provided coverage in the amount of $7000, and an endorsement, which increased coverage to $15000, were not severable, and the insurer's notice of cancellation for non payment of the premium for the additional coverage canceled the entire policy rather than the increased coverage alone. But in reaching that conclusion the court said: "The endorsement increased the amount of coverage for the same property and the same risk, namely: damages sustained to the insurance premises by fire," id page 611. The court went on to say at the same page: "The result, of course, would be different if the subsequently added endorsement to the policy extended the scope of the coverage to include a different type of insurance risk than that covered by the insurance policy." The court then cited Rosenthalv. Security Mutual Ins. Co. of New York, supra.
That is exactly what we have here. The endorsement for property damage added an entirely different type of insurance risk for the insurer than that covered by the original liability policy. The insurers are liable on their insured's property damage claim, apart from whether the insured was even negligent in causing damage to his or her own vehicle. That certainly is a different risk than the company originally assumed on the liability policy which provided protection against claims by others against the insured for the insured's own negligence. CT Page 9042
For the foregoing reasons, the motion for summary judgment is denied.
CORRADINO, J.