IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PATRICIA COMER, a married woman, | ) | |
| | ) | No. 31058-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAYNE COLISTRO and SHARON | ) | UNPUBLISHED OPINION |
| COLISTRO, individually and as husband | ) | |
| and wife; and, JOHN DOES I through V, | ) | |
| JANE DOES I through V; and DOE | ) | |
| ENTITIES I through V, | ) | |
| | ) | |
| Appellants. | ) | |

FEARING, J. — On December 24, 2008, Patricia Comer slipped and fell outside a residence Sharon Colistro owned in Spokane, Washington. After a bench trial, the trial court found Colistro negligently failed to maintain the rain gutters at the residence. Colistro's failure, the court concluded, caused ice to form on the landing, which caused Comer to fall. The trial court entered judgment in favor of Comer.

Colistro appeals, assigning 23 errors, raising 11 issues, and requesting a new trial based on new evidence. Many of the assignments involve the trial court's decision to exclude evidence Colistro sought admitted in violation of discovery rules and the court's scheduling order. She also challenges findings of fact and conclusions of law. Finally,

No. 31058-2-III
*Comer v. Colistro*

Colistro argues service of process was insufficient. We affirm all rulings of the trial court.

### FACTS

Johnny Patton and Kristina Birdsell leased a duplex at 2928 E. Grace, in Spokane, Washington (Grace Residence). On December 24, 2008, they invited Jerry and Patricia Comer to their home for Christmas Eve dinner. Spokane experienced extraordinary snowy weather that day. After dinner, Patton and the Comers exited the residence. Despite the weather, Patricia Comer wore no boots. As she exited, she fell outside the front door, displacing her left tibia and fracturing her fibula. The court found Comer "slipped on ice and/or snow." Clerk's Papers (CP) at 821.

On July 31, 2009, Patricia Comer filed suit against the owners of the Grace Residence, Wayne (now deceased) and Sharon Colistro. In addition to the complaint, Comer filed Returns of Service, indicating Sharon and Wayne Colistro were served with the complaint on July 16. On October 9, after the Colistros failed to respond, a court signed an order of default against them.

Sharon Colistro claimed she was not served with process and did not know, until July 7, 2011, that Patricia Comer filed suit against her. She further claimed her husband died in 2000, such that service of process on him in 2009 was not possible. When she learned of the suit, she recorded an interview with Comer. Colistro then moved to set aside the order of default.

2

On September 1, 2011, the court granted Sharon Colistro's motion to vacate the order of default "based on irregularities" in the service of the complaint. CP at 190. The court did not identify the irregularities of service. The court scheduled the trial date for March 19, 2012. Comer's counsel personally served Colistro on September 1, 2011, with another copy of the summons and complaint.

On October 7, 2011, Patricia Comer, through counsel, sent Sharon Colistro interrogatories requesting Colistro disclose the names, qualifications, and opinions of any experts she planned to call to testify. Colistro responded that she did not have that information at the time, but would forward it when she did.

On January 12, 2012, Sharon Colistro moved for a six-month extension of the trial date to secure assistance of counsel and continue discovery. On January 20, the trial court denied Sharon's motion for lack of "good cause." CP at 199.

On February 9, Mary S. Murphy appeared on behalf of Sharon Colistro. On February 10, the court amended the civil case scheduling order to permit Murphy additional time to prepare. The scheduling order set April 23 as the deadline for discovery. The court established a deadline for hearing dispositive pretrial motions and for exchanging witness lists, exhibit lists, and documentary exhibits as May 25. The scheduling order set trial for June 25.

On March 5 and April 3, Sharon Colistro disclosed testifying witnesses, which included lay witnesses Kristina Birdsell and Johnny Patton, and expert witnesses Richard

3

Fassett, Ph.D. Pharmacologist; Joellen Gill, M.A. Applied Cognitive Sciences; and S.C. Maloney, Engineer. Because Patricia Comer had yet to receive any information about the opinions or qualifications of expert witnesses, as she had requested in earlier interrogatories, her counsel sent opposing counsel a letter requesting this information for the second time.

On May 24, more than a month after the discovery cutoff, Sharon Colistro sent Patricia Comer affidavits from Johnny Patton and Kristina Birdsell. On May 29, and after the cutoff prescribed by the scheduling order, Colistro sent Comer the reports and affidavits from experts Richard Fassett, Joellen Gill, and S.C. Maloney. Colistro possessed and could have submitted the affidavits, interrogatories, and expert reports, other than Gill's report, before the scheduling order deadline.

On June 5, and after the cutoff prescribed by the scheduling order, Sharon Colistro moved for summary judgment. On June 11, Patricia Comer moved "to Strike Defendant's Answer to [her] Complaint and Re-Enter Default or for other sanctions," because of Colistro's repeated violations of the scheduling order and rules of discovery. CP at 237.

On June 19, Sharon Colistro submitted a 500-page "AFFIDAVIT & SUPPLEMENTAL INFORMATON FOR MOTION OF DISMISSAL OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT," which included both information she previously submitted to the court and information she never disclosed, the latter including

4

a transcript of the 2011 recorded interview of Patricia Comer. CP at 298. The court

denied both the motion for summary judgment and dismissal as untimely.

On June 25, 2012, at the beginning of trial, the court entertained a motion in

limine brought by Patricia Comer. Because Sharon Colistro violated the scheduling order

and discovery rules, the court excluded:

- The "interrogatories" and affidavits of Johnny Patton and Kristina Birdsell;
- The conversation Colistro recorded with Comer;
- All material included in Sharon's 500-page affidavit; and
- Testimony of all but one of Sharon's expert witnesses.

Upon trial, the trial court found poor conditions and poor maintenance of rain

gutters at the Grace Residence caused Patricia Comer to fall. Both Comer's and Sharon

Colistro's experts "established that the rain gutters were displaced, leaky[,] and

corroded." CP at 822. Comer's expert "further testified that the moss buildup in the rain-

gutters over the garage would cause a blockage, preventing water from reaching the

downspout, which would cause the gutters to backup and overflow. This in turn would

allow leaking water to fall onto the front walkway where it would fall and freeze." CP at

822. Both Comer's and Colistro's experts testified that the corrosion and moss in the

gutters were present for a significant amount of time prior to Comer's fall. Therefore, the

court found, Colistro "had a substantial time period in which to repair the rain gutters."

CP at 822. The trial court also found that tenant Johnny Patton informed Colistro "three

(3) weeks prior to the incident that there was an issue with the corner rain-gutters near the

fireplace coming down from excess ice and snowpack on the roof that needed to be

5

addressed." CP at 822. Colistro disagreed that she was informed of any problem with

the rain gutters. The court found that the rain gutters were structural components of the

residence, which Sharon Colistro was responsible to maintain.

The trial court concluded that Patricia Comer was a social guest, to whom Sharon

Colistro owed a duty to use ordinary care. The court also concluded Colistro had actual

or constructive knowledge of the dangerous condition, the neglected rain gutters. When

she failed to remedy the problem in a reasonable time, her conduct fell below the

ordinary care standard she owed to Patricia Comer. The trial court concluded that

Patricia Comer was also negligent and adjudged Comer to be 30 percent at fault and

Colistro to be 70 percent at fault. The trial court awarded Comer $39,211.58.

## ANALYSIS

Sharon Colistro's assignments of error may be organized into five issues:

(1) Whether the trial court had jurisdiction because of lack of service upon her?
(2) Whether the trial court erred when it concluded her tenants could permit third-parties to inspect their residence?
(3) Whether the trial court abused its discretion when it excluded some of her evidence and admitted some of Patricia Comer's evidence?
(4) Whether substantial evidence supports the findings of fact she challenges?
(5) Whether this court should grant her a new trial because of newly discovered evidence?

### JURISDICTION

After obtaining the order vacating the default judgment and being served with

process by counsel on September 1, 2011, Sharon Colistro did not again contend, before

6

the trial court, that the court lacked jurisdiction for want of service. For this reason, Patricia Comer contends Colistro may not assert lack of jurisdiction on appeal. Nevertheless, RAP 2.5(a) permits a party to claim lack of trial court jurisdiction for the first time on appeal.

Reaching the merits of the argument does not harm Patricia Comer. Colistro contends service is defective because she was not served with the summons and complaint the first time within 90 days of the filing of the complaint in violation of RCW 4.16.170. In turn, she argues the second service was defective because Comer did not file the summons and complaint anew within 14 days in violation of CR 3(a). Colistro misreads the statute and the court rule.

RCW 4.16.170 states:

> For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint . . . . If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

The statute is "for the purpose of tolling any statute of limitations." RCW 4.16.170. Colistro does not contend the statute of limitation expired before Patricia Comer filed the complaint and served her. In this case, the statute of limitations is three years. RCW 4.16.080. Comer fell on December 24, 2008. She filed the complaint on

7

July 31, 2009. Colistro admits that she was personally served on September 1, 2011. As we wrote in *Hansen v. Watson*, 16 Wn. App. 891, 892-93, 559 P.2d 1375 (1977), "Since both service and filing were accomplished before the statutory period of limitation had expired, . . . the issue of tolling [the limitation] period does not arise." "Under these circumstances it is immaterial that the service and filing were not accomplished within 90 days of each other."

CR 3(a) reads, in relevant part:

> Except as provided in rule 4.1, a civil action is commenced by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint. Upon written demand by any other party, the plaintiff instituting the action shall pay the filing fee and file the summons and complaint within 14 days after service of the demand or the service shall be void.

The rule benefits Colistro none since the summons and complaint was filed with the court before service in September 2011.

The trial court properly exercised jurisdiction.

## INSPECTION OF GRACE RESIDENCE

Sharon Colistro assigns error to the use of evidence gathered from an inspection of the Grace Residence that her tenants, not she, allowed. The evidence was used by Patricia Comer's expert in forming opinions.

In support of her argument that she, as the landlord, needed to consent to an inspection, Colistro cites *State v. Jesson*, 142 Wn. App. 852, 176 P.3d 549 (2008), a Fourth Amendment case. Nevertheless, no public official entered the Grace residence.

8

Entries onto private property do not rise to constitutional issues unless executed by government agents. *See, e.g., United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) (court refused to suppress evidence found by private freight carriers because they were not state actors); *State v. McWatters*, 63 Wn. App. 911, 822 P.2d 787 (1992) (court refused to suppress evidence because paramedic who found evidence was not acting as a state agent). This case does not implicate state or federal constitutional search issues, but, at worst, is a violation of discovery rules.

Sharon Colistro also asserts that Patricia Comer violated CR 34. CR 34(a) and CR 34(a)(2) states, "Any party may serve on any other party a request . . . to permit entry [upon] designated land or other property [in *the possession or control* of the party upon whom the request is served for the purpose of inspection]." Tenant Johnny Patton testified that he had exclusive possession and control of the Grace Residence. He also testified that he permitted Comer's expert to inspect the rain gutters attached to the Grace Residence. Therefore, the trial court correctly found Patricia Comer did not violate CR 34.

In a separate assignment of error, Sharon Colistro contends that, under the lease agreement with Johnny Patton, she had the exclusive right to permit inspection. Colistro raises this issue for the first time on appeal. Thus, we decline to address this issue. RAP 2.5.

Even if this court decided to review the issue, it would find neither the Landlord Tenant Act, ch. 59.18 RCW, nor the lease give Sharon Colistro the *exclusive* right to permit inspection of her tenant's property. The lease states the "[l]andlord reserved the right of access to the premises for the purpose of . . . inspection." Br. of Appellant at 28. The language does not suggest the landlord has the exclusive right to permit inspection. The Landlord-Tenant Act similarly gives landlords the right to enter premises for inspection purposes, but it is not an exclusive right. RCW 59.18.115. In the past courts have found tenants' permission to third-parties to inspect their premises overrides the landlord's written refusals. *Cranwell v. Mesec*, 77 Wn. App. 90, 104, 890 P.2d 491 (1995). Landlords' minimal expectation of privacy in common areas makes it unreasonable to allow them to veto a tenant's consent to an inspection. *Mesec*, 77 Wn. App. at 105 (citing *State v. Cantrell*, 124 Wn.2d 183, 191, 875 P.2d 1208 (1994)).

EVIDENTIARY EXCLUSIONS

Sharon Colistro contends the trial court abused its discretion when it excluded, because of late disclosure, the conversation she recorded with Patricia Comer; her 500-page affidavit; and the interrogatories she served on eye witnesses Johnny Patton and Kristina Birdsell. Colistro also alleges the court violated her freedom of speech when it excluded this evidence.

Patricia Comer submitted interrogatories to Sharon Colistro twice, once when she represented herself, and again to her counsel, after she retained one. After the cutoff

10

prescribed by the court's scheduling order and in violation of CR 33, Colistro sent reports and affidavits of experts S.C. Maloney, Joellen Gill, and William E. Fassett. A week before trial, Colistro submitted a 500-page long "AFFIDAVIT & SUPPLEMENTAL INFORMATION FOR MOTION OF DISMISSAL OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT," which included a transcript of a 2011 conversation she recorded with Comer. CP at 298. Colistro never previously disclosed the transcript. Colistro repeatedly and significantly violated discovery rules and the court's scheduling order. She possessed all the evidence she tardily sought to admit, except for Joellen Gill's expert report, before the discovery cutoff.

Colistro excuses her late delivery of the transcript from the recorded conversation on the ground she only learned how to operate the recorder 10 days before trial. She fails to disclose how she recorded the Comer conversation if she did not know how to operate the recorder, why she did not learn to operate the recorder earlier, how she finally learned its operation 10 days before trial, why she did not earlier seek the assistance of someone to operate the device, why she did not earlier disclose the existence of the recording despite her inability to operate the recording, or why she did not earlier voluntarily turn over the recording to the court or Comer to play on their own.

CR 37(d) permits a court to exclude evidence as a sanction when a party violates discovery rules. LAR 0.4.1(g)(3) permits a judge to impose such sanctions as justice requires when its scheduling order is disregarded. In fashioning a sanction, the trial court

11

has "vast discretion." *Allied Fin. Serv. Inc., v. Mangum*, 72 Wn. App. 164, 864 P.2d 1, 871 P.2d 1075 (1994) (citing *Lampard v. Roth*, 38 Wn. App. 198, 201, 694 P.2d 1353 (1984)). Sharon Colistro repeatedly violated both discovery rules and the court's scheduling order. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Hoskins v. Reich*, 142 Wn. App. 557, 566, 174 P.3d 1250 (2008). "A trial court abuses its discretion if its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). Here the trial court did not abuse its discretion.

An additional reason lies to exclude the interrogatory answers of tenants Johnny Patton and Kristina Birdsell. CR 33 only allows the submission of interrogatories to parties—not to nonparties. Colistro cites no authority that would permit her to send interrogatories to nonparties, because she cannot. "Interrogatories . . . cannot be directed to a nonparty." 3A KARL B. TEGLAND, WASHINGTON PRACTICE SERIES 766 (6th ed. 2013). Discovery from a nonparty should ordinarily be sought by means of a deposition under CR 30. TEGLAND, *supra* at 766.

Even assuming the trial court committed error by excluding Johnny Patton and Kristina Birdsell's interrogatory answers, the error was harmless. An error is harmless if the outcome of the proceeding would have been the same even if the error had not occurred. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984). Patton and Birdsell

testified at trial. At trial, Sharon Colistro was free to elicit the statements they made in response to her interrogatories. Because the outcome would have been the same even if the trial court had admitted the interrogatories, any error was harmless.

Last, Sharon Colistro asserts the trial court violated her freedom of speech when it excluded her evidence. To support this contention she offers *United States v. Eichman*, 731 F. Supp. 1123, 1127 (D.C. Cir. 1990), which explains the federal constitution's First Amendment protects the expression of viewpoints some find offensive or disagreeable. She offers no support for the proposition that evidentiary rules violate the First Amendment. This court will not address an issue a party fails to support with "adequate, cogent argument and briefing." *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990) (citing *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989)).

EVIDENTIARY ADMISSIONS

Sharon Colistro assigns error to the trial court's admission into evidence of Dr. Ernest Corp's recommendations and conclusions and Dr. David Schenker's perpetuation report. The general rule is that issues not raised in the trial court may not be raised for the first time on appeal. *See* RAP 2.5(a); *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996). Sharon Colistro did not challenge the admissibility of Ernest Corp's recommendations and conclusions or David Schenker's perpetuation report at trial. Thus, this court declines to review them now.

13

Next Sharon Colistro assigns error to the trial court's permitting Patricia Comer's civil engineering expert, Dr. Corp, to testify that rain gutters at the Grace Residence were corroded and unsealed, that moss older than four weeks obstructed the gutters, and that the gutters leaked onto the tenant's walkway. The assignment is based upon the alleged lack of expertise of the witness and his reliance upon hearsay.

In her brief, Sharon Colistro lists 6 objections her counsel registered at trial and 14 statements she alleges on appeal are hearsay or opinions Dr. Corp made outside his field of expertise. The 14 latter statements were not challenged at trial. Thus, we decline to review these statements. *Moen*, 129 Wn.2d at 543.

We address the six objections raised at trial and conclude the trial court did not err in any of its rulings. Before Dr. Ernest Corp took the stand, Sharon Colistro objected to any reference Corp might make to meteorology. Since Corp had yet to testify, the trial court explained, "[c]ertainly counsel, you may object if, in fact, that comes into the testimony of the witness. I am not able to provide an anticipatory ruling until the issue is actually before me." 2 RP at 228. Counsel never later objected perhaps because Corp never opined about meteorology.

Comer's counsel asked Dr. Ernest Corp about a conversation he had with Patricia Comer. Colistro objected and Comer's counsel shied away from the question, never to return. Even if counsel returned to the line of inquiry, ER 703 would have permitted the testimony. Corp was asked about his conversation with Comer to lay a foundation for his

14

expert opinion. Experts are allowed to base their opinions on the testimony of others, even the plaintiff for whom they are testifying. *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344 (5th Cir. 1983) (plaintiff's expert was properly allowed to express an opinion on the cause of an accident on the basis of the plaintiff's testimony).

Sharon Colistro objected to Dr. Ernest Corp's testimony that he observed moss in the rain gutter four years after the accident, and contends the testimony is outside his field of expertise. Colistro's counsel, however, objected because the testimony was "irrelevant." 2 RP at 246. The trial court never had the opportunity to consider whether Corp testified outside his field of expertise. We will decline to review an issue raised for the first time on appeal. *Moen*, 129 Wn.2d at 543. A trial court should be given an opportunity to address whether testimony is outside the scope of the expert's expertise, before the testimony is challenged on appeal.

The testimony was likely permissible anyway, since an observation of moss need not be based upon expertise. The testimony was not Corp's opinion as an expert, but rather an observation that he relied on to form his expert opinion. As such it was permissible under ER 703, as a basis for his expert opinion. *State v. Roberts*, 142 Wn.2d 471, 522, 14 P.3d 713 (2000) (expert's personal observations from photographs were permissible).

Finally, Sharon Colistro objects to Dr. Ernest Corp's testimony regarding what Patricia Comer learned from Johnny Patton. At trial, Colistro objected to the testimony

15

as hearsay, and the court sustained the objection. Colistro should not complain of a ruling in her favor.

SUBSTANTIAL EVIDENCE

Sharon Colistro contests three of the trial courts findings of fact. Appellate courts review contested findings for substantial evidence. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010) (citing *In re Marriage of Schweitzer*, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997)). "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." *Cokeley*, 168 Wn.2d at 631 (citing *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). When there is conflicting evidence, courts defer to the trier of fact. *Pilcher v. Dep't of Revenue*, 112 Wn. App. 428, 435, 49 P.3d 947 (2002). Courts give "the party who prevails in the trial court the benefit of all reasonable inferences from the evidence that favor the court's findings." *Barker v. Advanced Silicon Materials, LLC, (ASIMI)*, 131 Wn. App. 616, 626-27, 128 P.3d 633 (2006) (citing *Weyerhaeuser v. Tacoma-Pierce County Health Dep't*, 123 Wn. App. 59, 65, 96 P.3d 460 (2004)).

Sharon Colistro objects to the trial court's finding that rain gutters are a structural building component. Colistro contends structural building components "are incorporated into the overall building structural system by a designer." Br. of Appellant at 30. She argues rain gutters are attachments to the building; they are not intricate to the overall integrity of the building. According to Colistro, because rain gutters are not structural

building components, it is the responsibility of the tenant to maintain. Nevertheless, substantial evidence supports the court's finding to the contrary.

Johnny Patton, the tenant, testified the lease required the landlord to maintain structural components, and that Colistro and he discussed rain gutters as being structural components within the terms of the lease. At trial, Sharon Colistro even conceded rain gutters are a structural component for which she, as landlord, was responsible. Comer asked Colistro, "[a]nd the rain gutter would be one of those structural components?" 3 RP at 378. Colistro responded, "Yes." 3 RP at 378.

Sharon Colistro invites us to consider the "professional building meaning for structural building components," though she identifies no text from which she removes this definition. Br. of Appellant at 30. Nor did she present any citation from a text at trial. We decline to review evidence not in the trial record and for which there is no authority. *See* RAP 9.1 and RAP 9.11.

Sharon Colistro next assigns error to the trial court's finding that Johnny Patton notified Sharon Colistro that the rain gutters were falling. Substantial evidence supports this finding, however. Patton testified that he told Colistro the rain gutters were falling from the roof because of the weight of ice. The only testimony that contradicts Patton's word is Colistro's testimony. When there is conflicting evidence, courts defer to the trier of fact, *Pilcher*, 112 Wn. App. at 435, and give all reasonable inferences to the prevailing party, Patricia Comer. *ASIMI*, 131 Wn. App. at 626-27. Thus, substantial evidence

17

supports the trial court's finding that Colistro had actual notice that the rain gutters required maintenance.

Even if the tenant did not notify Sharon Colistro of the need for maintenance, the trial court found she possessed constructive notice, and therefore, the finding of actual notice is irrelevant and harmless. An error is harmless if the outcome of the proceeding would have been the same even if the error had not occurred. *Jackson*, 102 Wn.2d at 695. Both Patricia Comer's and Sharon Colistro's "experts testified that the corrosion and [the] moss in the rain gutters would have been . . . discoverable by the defendant, SHARON COLISTRO, who would have had a substantial time period in which to repair the rain gutters." CP at 822. Because she had constructive notice, Colistro cannot prove the outcome of the proceeding would have been different.

Next, Sharon Colistro assigns error to the trial court's finding that Patricia Comer fell on ice when exiting the Grace Residence. Colistro contends Comer changed her stories between the time Colistro tape recorded her and the trial. We do not know, however, the content of the recording since the trial court excluded the recording because of its untimely production. Records from the hospital corroborate the testimony of Comer that she slipped on ice accumulated on the landing at the residence. Because all the facts admitted support Comer's version of events, substantial evidence supports the trial court's finding.

NEW TRIAL

Finally, Sharon Colistro contends the recording she made of Patricia Comer is new and that she discovered new evidence that the meteorology equipment at Spokane's Felts Field was faulty. Presumably weather data from Felts Field was used to show icy conditions. She asks this court to grant her a new trial under "Rule 7.5(a)(3), (5), (6), (7), and (8)." Nevertheless, there is no CR or RAP 7.5. Colistro appears to be referring to CrR 7.5 "NEW TRIAL." Since she did not suffer a criminal trial, this rule does not apply.

CR 59 is the civil rule that permits a superior court to grant a new trial for newly discovered evidence. CR 59. A Rule 59 motion, however, must be filed within 10 days of the judgment in superior court. CR 59(b). Motions filed after 10 days are untimely and need not be considered. *Griffin v. Draper*, 32 Wn. App. 611, 649 P.2d 123 (1982). The trial court entered its judgment on August 1, 2012. Colistro did not request a new trial until she filed her appellant's brief in February of 2013, and the request came in the brief. Not only is her request untimely, but she filed it in the wrong forum. Motions for a new trial must be filed in superior court. RAP 7.2(e).

If we were to address the merits of Sharon Colistro's motion for a new trial, the motion would also fail. Newly discovered evidence must be the type that could not have been discovered with reasonable diligence. CR 59(a)(4). A new trial will not be granted on the ground of newly discovered evidence when the moving party did not use due

diligence to discover the evidence. *Wick v. Irwin*, 66 Wn.2d 9, 13, 400 P.2d 786 (1965). Colistro seeks to admit (1) the recorded conversation she possessed since July 2011 and (2) evidence that the equipment at Felts Field malfunctioned in December 2008. The recording is not new evidence. She fails to show that, with reasonable diligence, she could not have earlier discovered that the equipment at Felts Field failed. We decline to grant Sharon Colistro a new trial because her motion is untimely, filed in the wrong forum, and does not meet the legal test established in CR 59.

## CONCLUSION

We affirm all trial court rulings and deny Sharon Colistro a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be field for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Brown, J.

Korsmo, C.J.